**Jean A. ERSPAMER, Petitioner,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, et al., Respondents.**

**No. 89–14.**

United States Court of Veterans Appeals.

Argued Feb. 7, 1990.

Decided Feb. 23, 1990.

G. Brian Busey and Tamar R. Schwartz, Washington, D.C., for petitioner Jean A. Erspamer.

Raoul L. Carroll and Pamela L. Wood, Washington, D.C., for respondent Secretary of Veterans Affairs.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Associate Judges.

Opinion for the court filed by Associate Judge FARLEY.

FARLEY, Associate Judge:

As the decade of the 1970's was ending, Ernest G. Erspamer sought disability compensation from the Veterans Administration (VA), claiming that the leukemia he was suffering from was service-connected. Now, as the decade of the 1990's begins,

Mr. Erspamer's claim and that of his widow, petitioner herein, have yet to be resolved by the Department of Veterans Affairs (DVA), the successor to the VA. Urging that this delay of over ten years has been unreasonable, petitioner asks that this court compel action on the claims by exercising jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), and issuing an extraordinary writ to the appropriate official or officials of the DVA.

In response, the DVA takes the position that this court lacks the jurisdiction necessary to issue the extraordinary relief requested by petitioner. We disagree. For the reasons set forth below, we hold that this court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to entertain petitioner's request. We further hold that the facts and circumstances presented by petitioner, and not disputed by respondent, present the type of situation which would warrant the granting of extraordinary relief. However, based upon the written and oral representations of counsel for respondent that the situation will soon be resolved, we decline petitioner's invitation to grant the requested relief at this time but will retain jurisdiction of this case pending future order of the court.

## I.

On April 14, 1947, Ernest G. Erspamer filed an initial claim for disability compensation stemming from his exposure to ionizing radiation while serving as hydrographic survey officer on the USS BOWDITCH during Operation Crossroads at the Bikini Atolls from August 1946 through September 1946. The claim was denied by the VA on October 7, 1947, with the statement that service connection of the "residuals of Exposure to Radio Activity [sic] as claimed by you was not shown by the evidence of record." Verified Petition at 3.

Having been diagnosed as suffering from chronic myelogenous leukemia, the claimant reopened his claim for service-connected benefits by a letter to the VA Regional Office in St. Paul, Minnesota, dated June 25, 1979. Additional exposure to ionizing radiation is also claimed to have resulted from February 16, 1963, to March 2, 1963, and from February 29, 1964, to March 13, 1964, at the United States Army Chemical School, Fort McClellan, Alabama. Mr. Erspamer died on December 13, 1980, and shortly thereafter, petitioner herself submitted a claim for service-connected death benefits and continued to pursue her husband's original claim for accrued disability benefits. The St. Paul Regional Office denied the claims on May 19, 1981. On June 12, 1981, petitioner filed a Notice of Disagreement and subsequently perfected her appeal to the Board of Veterans Appeals (BVA).

Petitioner's first appeal was heard by a traveling section of the BVA in San Francisco, California, on February 26, 1982. On August 29, 1982, the BVA denied the appeal. On April 27, 1983, petitioner moved for reconsideration of the claim. On March 1, 1984, a traveling BVA section heard petitioner's motion for reconsideration as well as her alternative request to reopen the claim due to new and material evidence. On November 15, 1984, the BVA remanded petitioner's claim to the Regional Office in San Francisco, California, with instructions that all available evidence of exposure be gathered and that an independent expert conduct a dose reconstruction of the radiation to which the veteran was exposed.

On September 6, 1986, without having arranged for the mandated independent dose reconstruction or gathered all of the requested evidence, the Regional Office issued a supplemental statement of the case. On October 26, 1986, the petitioner's claim was resubmitted to the BVA.

On April 29, 1987, the BVA issued the second remand order and again directed that the Regional Office hire an independent expert to reconstruct the dose of ionizing radiation to which the veteran was exposed. In addition, the second remand order prescribed specific action to be taken with respect to the gathering of the records of the veteran's exposure at Fort McClellan and how this information should be processed in the VA. The BVA specifically stated that "the case should be forwarded to the Chief Benefits Director for

referral to an independent expert, selected by the Director of the National Institutes of Health...." BVA Decision April 29, 1987, at 7 (Exhibit B of Verified Petition). Upon completion of the independent review, "the Chief Benefits Director should review the case.... The case should then be reconsidered by personnel of the [Regional Office]." *Id.* at 8. Noting that petitioner's claim had been pending "for such a prolonged period of time," the BVA's second remand order requested that the steps be taken as "expeditiously as possible" and it further directed that petitioner be advised of each development as it occurs. *Id.* at 5.

Almost three years have passed since the second remand by the BVA. Petitioner has not been advised of any progress, despite over thirty letters to the VA requesting action. On December 11, 1989, petitioner sought a writ from this court directing compliance with the second BVA remand within sixty days, ordering that the DVA pay a reasonable fee to an independent expert, prohibiting the DVA from preventing the independent expert from contacting petitioner, and an award of attorneys' fees and costs. The case was fully briefed and oral argument, the first before this court, was held on February 7, 1990.

## II.

The threshold question for this court to determine is whether it has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to grant the extraordinary relief requested by petitioner. The All Writs Act provides that

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).

■ The United States Court of Veterans Appeals is a "court[ ] established by Act of Congress." Section 4051 of the Veterans Judicial Review Act of 1988 (VJRA), Pub.L. 100–687, Title III, Sec. 301, 102 Stat. 4113, provides that "[t]here is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Court of Veterans Appeals." Article I courts are empowered to exercise jurisdiction under the All Writs Act. *See, e.g., Noyd v. Bond,* 395 U.S. 683, 695 n. 7, 89 S.Ct. 1876, 1883, n. 7, 23 L.Ed.2d 631 (1969) (United States Court of Military Appeals); *United States v. Frischholz,* 16 C.M.A. 150, 36 C.M.R. 306 (1966) (United States Court of Military Appeals); *Alberta Gas Chemicals, Inc. v. United States,* 496 F.Supp. 1332, 1335–36 (Cust.Ct.1980) (United States Customs Court, which, in 1980, became the United States Court of International Trade); *Yeager v. Greene,* 502 A.2d 980, 983 (D.C.1985) (District of Columbia Court of Appeals); *Margolis v. Banner,* 599 F.2d 435 (C.C.P.A.1979) (United States Court of Customs and Patent Appeals, which, in 1982, became the United States Court of Appeals for the Federal Circuit).

Congress specifically provided that this court would "have such assistance in carrying out of its lawful writ, process, order, rule, decree, or command as is available to a court of the United States." 38 U.S.C.A. § 4065(b) (West Supp.1989). Moreover, it is clear that Congress intended that this court have and, in appropriate instances, use jurisdiction under the All Writs Act. Senator Alan Cranston, Chairman of the Senate Committee on Veterans' Affairs, in his summary of the House and Senate compromise agreement, which was submitted in lieu of a conference committee report, stated:

> [O]ne of the powers that this new article I court, like any other U.S. court, would have is the power to issue whatever writs are necessary to conduct its business. Section 1651 of title 28, United States Code, provides:
>
> > The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.
>
> I would expect the court to utilize this power when it [is] ... necessary for it to do so in order for justice to prevail.

134 CONG.REC. S16648 (daily ed. October 18, 1988) (statement of Sen. Cranston). Similar remarks endorsing this court's All Writ Act authority were made by Representative Don Edwards during the debate in the House of Representatives over the VJRA. 134 CONG.REC. H10359 (daily ed. October 19, 1988) (statement of Rep. Edwards).

Despite the confirmation of the authority of this court to exercise All Writs Act jurisdiction by the terms of the All Writs Act itself, the plain language and legislative history of the VJRA, and the case law on Article I courts, respondent nevertheless takes the position that such jurisdiction is lacking. Without benefit of citation to any relevant authority, respondent argues that it cannot be the subject of the All Writs Act jurisdiction of this court because the DVA is an executive agency, not an inferior judicial tribunal. We disagree. The authority for the issuance of extraordinary writs by "[t]he Supreme Court and all courts established by Act of Congress" to officials of administrative and executive agencies has been firmly entrenched in American jurisprudence from its earliest days. *See, Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803); *Kendall v. United States,* 37 U.S. (12 Pet.) 524, 9 L.Ed. 1181 (1838).

The All Writs Act provides that courts may issue writs "in aid of their respective jurisdictions." This plain language does not limit the issuance of such writs to inferior courts. As Judge Edwards has noted, "[t]he authority of an appellate court to issue mandamus to an agency is analogous to its authority to issue the writ to District Courts." *Telecommunications Research and Action Center, et al. ("TRAC") v. FCC,* 750 F.2d 70, 76 n. 28 (D.C.Cir.1984) (citing *Association of National Advertisers v. FTC,* 627 F.2d 1151, 1179 (D.C.Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1113 (1980) (Leventhal, J., concurring)).

Congress vested exclusive jurisdiction over the review of BVA decisions in this court. *See,* 38 U.S.C.A. § 4052(a) (West Supp.1989); 38 U.S.C. § 211. Further-

more, as noted above, Congress emphasized in statutory form and in legislative history that this court has jurisdiction to issue extraordinary writs under the All Writs Act. In so doing, Congress was well aware that the All Writs Act jurisdiction of this court, if exercised at all, would be directed to officials of the DVA rather than to a judicial tribunal. In a subsequent amendment to the VJRA, Congress specifically provided that the appellate jurisdiction of this court would be extended to include compulsion of action "unreasonably delayed" by the Secretary. 38 U.S.C.A. § 4061(a) (West Supp.1989) as amended by The Veterans' Benefits Amendments of 1989, Pub.L. 101–237, 103 Stat. 2062. In addition to being contrary to established law, a decision that this court lacked jurisdiction to issue extraordinary writs to officials of the DVA merely because the DVA was an executive agency would frustrate the letter and the spirit of the VJRA. Moreover, such a decision would frustrate the Congressional desire for judicial review where, as is alleged here, the inadvertent or intentional failure of the DVA to act prevents a claimant from ever attaining a BVA decision which would be subject to review.

We hold, therefore, that this court has jurisdiction to issue extraordinary writs to officials of the DVA. However, in so doing, this court recognizes that the circumstances that would justify the issuance of such a writ must be compelling. As Judge, now Justice, Kennedy has observed:

The preemptory writ of mandamus has traditionally been used in federal courts to review nonfinal district court orders and is used only in exceptional circumstances. (citations omitted). Use of the All Writs Act in connection with agency matters has been even more rare and the scope of relief granted in these cases has been narrow. (citations omitted). The circumstances that will justify our interference with nonfinal agency action must be truly extraordinary, for this court's supervisory province as to agencies is not as direct as our supervisory authority over trial courts. (citations omitted).

*Public Utility Commissioner of Oregon v. Bonneville Power Administration,* 767 F.2d 622, 630 (9th Cir.1985).

Respondent also argues that we lack All Writs Act jurisdiction over this case because the appellate jurisdiction of this court extends only to claims in which the Notice of Disagreement was filed on or after November 18, 1988. VJRA, Sec. 402. Since petitioner's Notice of Disagreement was filed on June 12, 1981, respondent argues, this court, lacking appellate jurisdiction over the claims, also lacks All Writs Act jurisdiction. Again, we must disagree. Respondent reads the All Writs Act and the term "jurisdiction" too narrowly; the substantial body of case law supports a broader interpretation.

It is true that the All Writs Act only empowers a court to act "in aid of [its] ... jurisdiction[ ]," 28 U.S.C. § 1651(a), and the Act cannot be used to expand the statutory jurisdiction of a court. *See,* 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice,* ¶ 100.26 (2d ed. 1948 & Supp.1989). However, All Writs Act jurisdiction extends beyond pending cases; it embraces the prospective and potential jurisdiction of a court as well. As the Supreme Court has held: "The exercise of this [All Writs Act] power ... extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected." *FTC v. Dean Foods Co.,* 384 U.S. 597, 603–604, 86 S.Ct. 1738, 1742–1743, 16 L.Ed.2d 802 (1966) (quoting *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 25, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). *See, In the Matter of a Letter From: Michael Quigley,* 1 Vet.App. 1 (1990).

■ All Writs Act jurisdiction is particularly applicable where, as here, an alleged refusal to act would forever frustrate the ability of a court to exercise its appellate jurisdiction. "The court clearly has the power to issue writs under the All Writs Act in aid of its prospective appellate jurisdiction in the face of action ... that would frustrate such prospective appellate jurisdiction." *Margolis v. Banner,* 599 F.2d at 440–441. "There is no doubt that this

court has present jurisdiction to hear claims concerning nonfinal agency action (or inaction) that might affect our future statutory review of final agency action." *TRAC,* 750 F.2d at 79.

■ The question, therefore, is whether, under the circumstances of this case, this court has jurisdiction to act in aid of its "prospective" or "potential" appellate jurisdiction. We conclude that we have such jurisdiction.

A continuation of the ten year delay in resolving petitioner's claim and the inadvertent or intentional failure to comply with the remand orders of the BVA could well serve to frustrate the potential or prospective appellate jurisdiction of this court. It is neither possible nor necessary to discuss every conceivable way in which this court might be called upon to consider this case in the exercise of its appellate jurisdiction. A few examples will suffice, although it must be noted that in raising possibilities, this court takes no position on their efficacy.

The trigger for a Notice of Disagreement is an adjudication decision. In this case, it was the May 19, 1981, denial of benefits which triggered the original Notice of Disagreement filed by petitioner. In view of the two BVA remands for the development of additional evidence, there is real potential that there will be a subsequent adjudication. Indeed, 38 U.S.C.A. § 3008 (West Supp.1989) specifically provides that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the [Secretary] shall reopen the claim and review the former disposition of the claim." Similarly, should it be determined that there was "clear and unmistakable error," 38 C.F.R. § 3.105 (1988), in the original adjudication, petitioner's claim could be reopened. In either event, a new adjudication decision might give rise to a new Notice of Disagreement over which this court could have appellate jurisdiction.

Moreover, as we are advised by counsel for respondent, it "happens a lot" that Regional Offices change adjudication deci-

sions when claims are remanded by the BVA. Hearing of February 7, 1990, transcript at 73. If a claim were to be granted, of course, that would be the end of the matter. If however, benefits are denied or only partially granted, a new Notice of Disagreement might be filed and, again, an appeal could be within the appellate jurisdiction of this court.

Petitioner could also file a new Notice of Disagreement based upon the original 1981 adjudication decision and attempt to pursue a second appeal before the termination of the adjudication process presently in progress. Although such a Notice of Disagreement might well be deemed to be jurisdictionally defective, this court would certainly have appellate jurisdiction to make such a determination, as counsel for respondent agreed during argument.

It is impossible for this court to predict what course petitioner's claim might follow in the future and there is nothing to be gained by engaging in such an exercise. For the resolution of the question at bar, it is sufficient to note only that the inadvertent or intentional administrative delay by the DVA directly and adversely effects the potential and prospective appellate jurisdiction of this court. We hold, therefore, that this court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to entertain this petition in aid of its prospective appellate jurisdiction.

### III.

■ It must next be determined whether the relief requested by petitioner is warranted in this case. Mindful that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations," *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976), we turn to the two-prong test for its application. Before a court may issue a writ of mandamus, petitioners must show: (1) that they are clearly entitled to the writ; and (2) they lack adequate alternative means to obtain the relief they seek.

Petitioner first has "the burden of showing that [her] right to issuance of the writ

is 'clear and indisputable.'" *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953) (quoting *United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899). Just over a century ago, the Supreme Court discussed the issue presented by petitioner:

> The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; *but when they refuse to act in a case at all, ... a mandamus may be issued to compel them.* (emphasis added).

*United States v. Black*, 128 U.S. 40, 48, 9 S.Ct. 12, 14, 32 L.Ed. 354 (1888). In *Black*, the Supreme Court affirmed the denial of the writ of mandamus because, unlike here, it concluded that the official "did not refuse to act or decide. He did act and decide." *Id.*

Petitioner does not seek to compel a specific type or character of a decision; she asks only that, after ten years, a decision be made.

> [C]laims of unreasonable delay fall within the narrow class of interlocutory appeals from agency action over which we appropriately should exercise our jurisdiction. By definition, a claim of unreasonable delay cannot await final agency action before judicial review, since it is the very lack of agency action which gives rise to the complaint. It is also obvious that the benefits of agency expertise and creation of a record will not be realized if the agency never takes action. In addition, judicial review of claims of unreasonable delay do not prematurely inject the courts into the agency's consideration of the merits of the issue before it. Finally, agencies operate under a mandate to decide matters in a reasonable time, (footnote omitted) and Congress has instructed statutory review courts to compel agency action which has been unreasonably delayed (footnote omitted).

*Air Line Pilots Association, International, et al. ("ALPA") v. CAB,* 750 F.2d 81, 85 (D.C.Cir.1984); *see also, TRAC,* 750 F.2d at 79.

It remains to be determined whether the delay of over a decade in this case has been unreasonable. There is no standard of measurement or scale which can be used to make such a determination. In *Silverman v. NLRB,* 543 F.2d 428 (2d Cir.1976), a panel of the Second Circuit held that a delay of five years was clearly unreasonable whereas a panel of the D.C. Circuit later ruled that a five year delay was "not so great as to justify" mandamus. *In re Monroe Communications Corp.,* 840 F.2d 942, 943 (D.C.Cir.1988). Four years earlier, yet another panel of the D.C. Circuit had ruled that "a five year delay in adjudicating claims for a form of unemployment assistance payments would be difficult to justify under *any* set of circumstances." *ALPA,* 750 F.2d at 86 (emphasis in original). In this context, the D.C. Circuit has commented that:

> [D]elays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (citations omitted) ... the court should also take into account the nature and extent of the interests prejudiced by delay, (citation omitted); and the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" (citation omitted).

*TRAC,* 750 F.2d at 80.

Claims for benefits due to military service clearly implicate human health and welfare concerns as distinguished from economic regulation. In consideration of the "nature and extent of the interests prejudiced by delay," we must reject the suggestion made by counsel for respondent at argument that any and all prejudice resulting from the decade's delay would be offset by retroactive payment should the DVA ultimately determine that benefits were warranted. Payment of benefits ten years after they were due could never serve as full compensation. Moreover, the interests resulting from delay here transcend those just of the petitioner. "Quite simply, excessive delay saps the public confidence in an agency's ability to discharge its responsibilities and creates uncertainty for the parties, who must incorporate the potential effect of possible agency decisionmaking into future plans." *Potomac Electric Power Company v. ICC,* 702 F.2d 1026, 1034 (D.C.Cir.1983). Public confidence is particularly sapped where, as here, the delay results from the failure of one component of an agency to comply with the authorized mandate(s) of an office of the same agency speaking with the express authority of the head of the agency.

"While there is no absolute definition of what is reasonable time, we know that it may encompass 'months, occasionally a year or two, but not several years or a decade.'" *Community Nutrition Institute v. Young,* 773 F.2d 1356, 1361 (D.C.Cir.1985) (quoting *MCI Communications Corp. v. FCC,* 627 F.2d 322, 340 (D.C.Cir.1980). Based upon the facts presented by petitioner, and not disputed by respondent, we hold that there has been an unreasonable delay in the determination of petitioner's claims and in the compliance with the 1984 and 1987 remands of the BVA. Petitioner has carried "the burden of showing that [her] right to issuance of the writ is 'clear and indisputable.'" *Bankers Life and Casualty Co. v. Holland,* 346 U.S. at 384, 74 S.Ct. at 148 (quoting *United States v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286, 287, 43 L.Ed. 559 (1899)).

This showing, standing alone, is not enough. "To ensure that mandamus remains an extraordinary remedy, [the] petitioner[ ] must show that [she] lack[s] adequate alternative means to obtain the relief [she] seek[s]." *Mallard v. United States District Court for the Southern District of Iowa,* 490 U.S. 296, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989) (citing *Kerr v. United States District Court,* 426 U.S. at 402–403, 96 S.Ct. at 2123–2124); *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *In the Matter of a Letter From: Michael Quigley,* 1 Vet.App. 1 (1990).

■ The only avenue arguably still available to petitioner, the procedures for which do not appear in any DVA regulation or rule, would be a plea directly to the Secretary. At oral argument, the petitioner stated, and respondent conceded, that over the course of the five years that the remand orders have been pending, petitioner through counsel has written between 30 and 40 letters to the Regional Office. This fruitless effort serves to indicate that the petitioner has done all that she could to bring this matter to the attention of the DVA. Moreover, counsel for the respondent agreed during oral argument that this petition for relief in and of itself is enough to bring this matter to the attention of the Secretary and effectively serves, in this case, to exhaust that administrative remedy.

In view of the circumstances and the history of this case, requiring that the petitioner write directly to the Secretary of Veterans Affairs would be "tantamount to having petitioner[ ] do a useless act." *Margolis v. Banner*, 599 F.2d at 443. We hold, therefore, that petitioner has effectively exhausted any and all alternative means to obtain the relief she seeks.

Although petitioner appears to have satisfied the test for the relief sought, there are additional factors presented by this case which counsel hesitation. In the first place, there have been significant changes in the organization and structure of the agency since the second BVA remand of April 29, 1987. On March 15, 1989, the Veterans Administration was raised to Department status and the Administrator was elevated to Cabinet rank, becoming the Secretary of Veterans Affairs. 38 U.S.C.A. (West Supp.1989) § 201 note, Pub.L. 100–527, 102 Stat. 2635. This Secretary has not had the opportunity, based upon the record before this court and statements at oral argument, to address the delays of the Regional Office in complying with the remand orders of the BVA.

In addition, we now have the assurance of counsel for respondent that "[t]he factual development required by [the] BVA is currently in progress." Respondent's Memorandum of Points and Authorities in Opposition to Petition and In Response to Petitioner's Supplemental Memorandum at 7. Moreover, counsel has assured the court during argument that "now that we are aware of this case and the delays that are taking place, I think I can safely say that we will do what we can to expedite the process." Hearing of February 7, 1990, transcript at 60. Indeed, counsel for respondent suggested that this court defer action for six months, noting that "[t]he process may well be ... complete by then." *Id.* at 66.

Ten years is an undeniably, and unacceptably, long time to have passed since the petitioner's husband first filed the claim for benefits with the VA. The delays have benefited neither the parties nor the public and they cannot be permitted to continue. The petitioner has the right to a decision on her claim. However, based upon the representations of counsel for respondent and in recognition of the truly extraordinary nature of the relief requested, this court will refrain from granting the relief at this time but will retain jurisdiction of the case pending future order of the court. Petitioner may renew her request in six months if respondent is unable to adhere to the timetable suggested by its counsel. *See, In re Monroe Communications Corp*, 840 F.2d at 943; *TRAC*, 750 F.2d at 81.

### IV.

■ One technical issue remains. A decision by a single judge or a panel of this court in a case heard and determined in the exercise of our appellate jurisdiction, 38 U.S.C.A. § 4052 (West Supp.1989), does not become "the decision of the Court" until thirty days have passed. 38 U.S.C.A. § 4067 (West Supp.1989).

The instant case was heard not in the exercise of our appellate jurisdiction but pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which does not provide for any waiting period or delay. Indeed, the nature of the jurisdiction exercised and the remedy sought by petitioner is such that a thirty day waiting period would frustrate

the purposes of the extraordinary remedies contemplated by the All Writs Act. To impose an additional delay upon the administration of justice would be unfair and illogical.

We hold therefore that this decision, and all decisions of this court in the exercise of the jurisdiction conferred by the All Writs Act, are effective immediately and not subject to the 30 day delay imposed by 38 U.S.C.A. § 4067 (West Supp.1989). *Cf., Robinson v. United States,* 272 F.2d 554 (D.C.Cir.1959).

## V.

In accordance with the foregoing opinion, we hold that this court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), to consider this petition in aid of our potential or prospective jurisdiction. We hold further that the decade of delay by the Veterans Administration, and its successor, the Department of Veterans Affairs, in acting upon the claims submitted by petitioner and her husband has been unreasonable and that petitioner has exhausted all available alternative remedies. However, we decline to issue extraordinary relief at this time and deny the request for attorneys' fees and costs in view of to the representations of counsel for respondent that a resolution may be near. The court will retain jurisdiction pending future order of the court and petitioner may seek appropriate relief six months from the date of this decision if respondent is unable to adhere to timetable suggested by its counsel. This constitutes the decision of the court and is effective immediately.

*It is so Ordered.*