**Richard NASH, Petitioner,**

v.

**Togo D. WEST, Jr., Acting Secretary of Veterans Affairs, Respondent.**

**No. 97–749.**

United States Court of Veterans Appeals.

Feb. 23, 1998.

Richard Nash, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Peter M. Donawick, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. KRAMER and STEINBERG, Judges, filed an opinion concurring in part and dissenting in part.

NEBEKER, Chief Judge:

This petition for extraordinary relief in the nature of mandamus is before the en banc court sua sponte. A majority of the original panel would have construed the petition as a notice of appeal from an inferred denial of presumptive service connection for cancer under 38 C.F.R. § 3.309. When the panel opinion, with the author's dissent, was circulated for internal notice purposes an en banc vote was called for and, by a vote of 5 to 2, was granted.

The actual relief sought through the petition is an order directing the board to decide his claims without further remand of a non-presumptive aspect of the claim for the same cancerous condition. The Court holds that an adequate remedy by appeal exists as to both the presumptive and non-presumptive service connection claims if those decisions are adverse to the petitioner. The petition will therefore be denied.

## I. FACTS

The Court does not have a full record of the proceedings, as it would in an appeal, but from exhibits attached to the pleadings the following is known. The appellant served with Headquarters Company, 1136th Engineer Construction Group, and was stationed in Osaka, Japan, from September to December 1945. (The Court notes that the appellant's service was presumably with the U.S. Army; Further details of the appellant's service are apparently unavailable because his service records were destroyed in a 1973 fire at the National Personnel Records Center. *See* Secretary's Response to Court's July 3, 1997, Order at n. 2. Moreover, the Board informed the appellant in June 1995 that his case had been handled by one of two VA employees later charged with tampering with claimants' records. *See Richard L. Nash*, BVA 92–01 533, at 2 (Jan. 31, 1996).)

In March 1989, the appellant filed a claim for service connection for breast cancer due to exposure to ionizing radiation during World War II. After a VA regional office (RO) denial and three BVA remands of the appellant's claim, an April 8, 1997, decision of the Board found that the appellant had been

stationed in Osaka, Japan, from September 28, 1945, to December 6, 1945, but that he had "never participated in the occupation of either Hiroshima or Nagasaki, as defined at 38 C.F.R. § 3.309(d)(3)(vi)." *Richard L. Nash*, BVA 92–01 533, at 2 (Apr. 8, 1997). The Board again remanded the claim in order for the RO to obtain further dosage estimates of the appellant's exposure to ionizing radiation during his service in Japan and to conduct "further evidentiary development provided [for] by 38 C.F.R. § 3.311" based on both "an eight-hour visit to Hiroshima as early as October 7, 1945," and "later exposure resulting from his eating off of ... tables covered with ... aluminum sheets salvaged from Hiroshima." *Id.* at 2–3.

On May 14, 1997, the now 73-year-old appellant, indicating that his "health is not good," filed a "request for extraordinary relief ... to assure I can receive my due process rights in my [lifetime]," because his appeal had been "remanded by the Board ... on [November 3, 1992,] June 20, 1994, January 31, 1996, and April 8, 1997[,] for a total of four remands." After receiving the appellant's May 14, 1997, petition, the Court issued several orders to the Secretary, and the Secretary responded on August 14, 1997 (Response 1), October 21, 1997 (Response 2), and December 9, 1997 (Response 3). The appellant, on December 17, 1997, filed a reply to the Secretary's responses.

## II. ANALYSIS

■ In its latest remand decision the Board advised that:

Under 38 U.S.C.[ ] § 7252 ..., only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Veterans Appeals. This remand is in the nature of a preliminary order and does not constitute a decision of the board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (1995).

*Nash*, BVA 92–01 533, at 4 (Apr. 8, 1997). The Court holds that the Board did not exceed its jurisdiction, under the circumstances revealed here, in reserving final decision on the presumptive claim. The Board had previously remanded for "a radiation dose estimate based on the legally required assumption that the veteran's service in Japan included temporary duty in the vicinity of Hiroshima." *Richard L. Nash*, BVA 92–01 533, at 2 (June 20, 1994). Then in April 1997 it again remanded for a dose estimate based on exposure to metal he had acquired in Hiroshima for use by his unit in Osaka. While these remands are undoubtedly frustrating to petitioner, fragmenting his claim into potentially two appeals to this Court—one of which a majority of the original panel would have imposed on him by recharacterizing his petition—is contrary to well established appellate procedures. *See Harris v. Derwinski*, 1 Vet.App. 180, 183 (1991) ("This Court will neither review BVA decisions in a piecemeal fashion nor unnecessarily interfere with the [VA] deliberative process.").

■ Pursuant to the All Writs Act, and as held in *Erspamer v. Derwinski*, 1 Vet.App. 3, 7 (1990), the Court as a court "established by Act of Congress" (28 U.S.C. § 1651) has authority to grant extraordinary relief in aid of its potential jurisdiction. In order to show entitlement to the writ, the petitioner must satisfy a two-part test. First, he must demonstrate a clear and indisputable right to the writ. Second, he must show that he lacks an adequate alternative means to obtain the relief sought. *Id.* at 9 (citing *Kerr v. United States District Court*, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976)); *See also Steffens v. Brown*, 8 Vet.App. 142 (1995).

The petitioner's allegations do not evidence a clear and indisputable right to the writ. While a fourth remand by the Board may be unfortunate, ordering the Defense Nuclear Agency to estimate this veteran's exposure from metal was simply responding to additional evidence and argument presented by the veteran. The delay involved, although frustrating to the petitioner, must be unreasonable under all circumstances before the Court will inject itself into the administrative agency's adjudicative process. *See Erspamer*, 1 Vet.App. at 9–10 (*quoting Air Line Pilots Ass'n, Int'l v. CAB*, 750 F.2d 81, 85 (D.C.Cir.1984)). Here, the circumstances are not so extraordinary as to justify the Court's exercise of its All Writs power. The exhaustion of the petitioner's appellate remedies

may secure the relief he ultimately seeks, and, if not, he has the remedy of timely appeal as of right to this Court.

The Court further notes that, in view of the Secretary's responses on the issue of 38 C.F.R. § 3.309, the Court has no doubt that the Board will include a reasoned and fully supported decision on the applicability of that regulation and the presumption based thereon, should the remand not prove fruitful to the petitioner and an appeal to the Board be necessary. The Court notes that the Secretary is required to expedite the remand proceedings when the Board orders a remand (§ 302 of the Veterans' Benefits Improvement Act of 1994, Pub.L. No. 103–446, 108 Stat. 4645, 4648 (1994)) (found at 38 U.S.C. § 5101 note).

## III. CONCLUSION

Upon consideration of the foregoing, the appellant's May 14, 1997, petition for an extraordinary writ is DENIED because he has not shown that he lacks an adequate alternative means of obtaining a BVA decision on the question of service connection, see Erspamer v. Derwinski, 1 Vet.App. at 9. See also In the Matter of the Fee Agreement of Cox, 10 Vet.App. at 374–75 (where direct appeal is available "mandamus would normally not be in order" unless "pursuing the normal appellate route would have been futile"). Because of the appellant's advanced age and his averment of poor health, and because of the four remands that the Board has already made in this case, the Court trusts that the BVA and the Secretary will expeditiously treat this matter.

KRAMER and STEINBERG, Judges, concurring in part and dissenting in part:

We dissent because we would hold that the pro se appellant submitted a timely Notice of Appeal (NOA) as to one aspect of the April 8, 1997, decision of the Board of Veterans' Appeals (BVA or Board) that constituted a final appealable decision, and we would vacate that decision and remand the matter for readjudication. We concur only in the result with respect to the Court's denial of the petition for an extraordinary writ.

### A. Appeal of the BVA Decision

It is true that the pro se appellant styled his May 14, 1997, filing as a petition for extraordinary relief under Rule 21 of the Court's Rules of Practice and Procedure, rather than as an appeal from the April 8, 1997, BVA decision. However, he appears to have so characterized his filing in light of the following, partially misleading, statement at the conclusion of the Board decision:

> Under 38 U.S.C.[ ] § 7252 ..., only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Veterans Appeals. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (1995).

*Richard L. Nash*, BVA 92–01 533, at 4 (Apr. 8, 1997). As a matter of law, the BVA was correct that the April 1997 decision was not a final appealable decision insofar as it remanded to the Department of Veterans Affairs (VA) regional office (RO) an issue relating to 38 C.F.R. § 3.311 (1997), and the Court thus does not have jurisdiction over that determination because there has not been a final BVA decision on this § 3.311 matter. *See* 38 U.S.C. §§ 7252(a), 7266(a); *In the Matter of the Fee Agreement of Cox*, 10 Vet.App. 361, 366 (1997) ("Court has jurisdiction to review VA adjudicative actions only under 38 U.S.C. § 7252(a) and pursuant to a final Board decision" (citing *Matter of Wick*, 40 F.3d 367, 370–73 (Fed.Cir.1994))); *Horowitz v. Brown*, 5 Vet.App. 217, 225 (1993) (in order for claimant to obtain Court review of BVA decision, decision must be final and person adversely affected must file NOA within 120 days after date on which notice of BVA decision is mailed).

Nevertheless, the BVA also made a determination that the veteran had "never participated in the occupation of either Hiroshima or Nagasaki, as defined at 38 C.F.R. § 3.309(d)(3)(vi)." *Nash*, BVA 92–01 533, at 2. Not only did the Board dispose of that issue, but it did so with finality, ruling most emphatically that "[the appellant] is *completely* mistaken" in contending that "the cause of his malignant melanoma of the chest wall in 1955 must be presumed to have been

his exposure to ionizing radiation in service." *Id.* Moreover, the BVA remanded only the issue of service connection under 38 C.F.R. § 3.311 even though the presumptive-service-connection issue under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d) (1997) was clearly on appeal. As . to that matter, the Court should hold, as a matter of law, that the BVA was mistaken in the above-quoted conclusion that the BVA decision was not a final appealable decision. In an August 11, 1993, RO decision—pursuant to a BVA remand as to which the appellant had first perfected his appeal in 1991, *see* Response 1 at 2—the RO denied service connection for breast cancer based on a finding by the RO that the veteran had not been involved with the occupation of Hiroshima during his military assignment in Japan. *See* Response 1 at Attachment D. Upon return to the Board, the appellant specifically argued to the Board that a dose estimate was "not required in his case, since the cause of his malignant melanoma of the chest wall in 1955 must be presumed to have been his exposure to ionizing radiation in service." *Nash,* BVA 92–01 533, at 2. Accordingly, there is no question that the issue of the appellant's participation in the occupation of Hiroshima for purposes of § 3.309 was duly appealed to the Board, and the Board in its April 1997 decision made a final adverse disposition of that issue as the basis for denying entitlement to presumptive service connection for breast cancer under 38 U.S.C. § 1112(c)(2)(C).

Under these circumstances, we would hold that the appellant's May 14, 1997, filing, as well as seeking an extraordinary writ, constituted a timely NOA. The Court applies a liberal rule of construction to NOAs filed by pro se appellants. *See Calma v. Brown,* 9 Vet.App. 11, 15 (1996) ("NOA need not contain a literal statement that a BVA decision is being appealed to the Court"); *Losh v. Brown,* 6 Vet.App. 87, 90 (1993) ("Court has traditionally adopted a liberal rule of construction as to what constitutes a valid NOA"); U.S. VET.APP. R. 45(h) ("Clerk [of the Court] shall liberally construe the rules as they apply to appellants representing themselves"). The NOA content criteria were met, as to that portion of the BVA decision that made a final decision on this issue, because the filing provides the name and address of the appellant and the date of the BVA decision being contested and clearly expresses an intent to seek relief from this Court. *See Calma,* 9 Vet.App. at 15; *Losh,* 6 Vet.App. at 90; *Chadwick v. Derwinski,* 1 Vet.App. 74, 76 (1990) (holding that document not complying with prescribed form for NOA, that was filed by appellant, that requested review by Court, and that was received by Court within 120 days after notice of BVA decision was mailed, constituted valid NOA); *cf. In the Matter of the Fee Agreement of Smith,* 10 Vet.App. 311, 314 (1997) (where BVA remanded one issue but failed to consider second issue raised to it, such failure was final decision for purposes of entering into · fee agreement permitted by 38 U.S.C. § 5904(c)(1) for services rendered subsequent to final BVA decision), *mot. for recons. denied,* —— Vet.App. ——, No. 95–307 (order Oct. 30, 1997), *mot. for en banc review denied,* 11 Vet.App. 253, No. 95–307, 1997 WL 913053 (Dec. 12, 1997); *Pittman v. Brown,* 9 Vet.App. 60, 61, 63–65 (per curiam order) (suggesting that defective notice of appellant's rights could extend NOA filing period), *rev'd on other grounds,* 124 F.3d 227 (Fed.Cir.1997) (table).

### B. Review of the Decision

Having concluded that the § 3.309(d)(3)(vi) presumptive-service-connection issue decided by the Board is before the Court for review, we would vacate the Board decision as to that claim because, as discussed below, the Board failed to provide an adequate statement of reasons or bases for its determination, as required by 38 U.S.C. § 7104(d)(1) (Board is required to provide written statement of reasons or bases for findings and conclusions on all material issues of fact and law presented on the record). *See Allday v. Brown,* 7 Vet.App. 517, 527 (1995) (Board's statement of reasons or bases must be adequate to enable claimant to understand precise basis for Board's decision, as well as to facilitate review in Court); *Simon v. Derwinski,* 2 Vet.App. 621, 622–23 (1992); *Gilbert v. Derwinski,* 1 Vet.App. 49, 57 (1990); *see also Brown v. Gardner,* 513 U.S. 115, 118, 115 S.Ct. 552, 555, 130 L.Ed.2d 462 (1994) ("interpretive doubt is to be resolved in the

veteran's favor"); *Smith v. Brown*, 35 F.3d 1516, 1523 (Fed.Cir.1994) (canons of statutory construction apply equally to regulations).

Presumptive service connection is provided for by 38 C.F.R. §§ 3.309(d)(1) and (d)(2)(iii) where "[c]ancer of the breast" becomes manifest in a "radiation-exposed veteran." *See* 38 U.S.C. § 1112(c)(2)(C). A "radiation-exposed veteran" is defined as "a veteran who ... participated in a radiation-risk activity." 38 U.S.C. § 1112(c)(3)(A); *see also* 38 C.F.R. § 3.309(d)(3)(i). A "radiation-risk activity" includes, inter alia, "[t]he occupation of Hiroshima or Nagasaki, Japan, by United States forces during the period beginning on August 6, 1945, and ending on July 1, 1946." 38 U.S.C. § 1112(c)(3)(B); *see also* 38 C.F.R. § 3.309(d)(3)(ii)(B). Under 38· C.F.R. § 3.309(d)(3)(vi), "occupation of Hiroshima or Nagasaki, Japan, by United States forces" is defined as:

> [O]fficial military duties within 10 miles of the city limits of either Hiroshima or Nagasaki, Japan, which were required to perform or support military occupation functions such as occupation of territory, control of the population, stabilization of the government, demilitarization of the Japanese military, rehabilitation of the infrastructure or deactivation and conversion of war plants or materials.

Based on the Secretary's Responses 1 and 2, three relevant factors emerge from the applicable law and regulation set forth in the preceding paragraph: (1) Whether the appellant manifested cancer of the breast within the meaning of 38 C.F.R. § 3.309(d)(1), (d)(2)(iii); (2) whether he was present in Hiroshima; and (3) whether such presence, if established, constituted "occupation of Hiroshima" within the meaning of § 3.309(d)(3)(vi).

With regard to the first factor, the Secretary, in Response 2, questions for the first time manifestation of cancer of the breast in the appellant. *See* Response 2 at 8–10. However, the BVA appears to have acknowledged the existence of breast cancer by several actions: First, the BVA, in a November 3, 1992, decision, stated that the appellant "received treatment for breast cancer beginning in 1955 ..., [and] was diagnosed as

having malignant melanoma of the anterior of the chest wall, and a left radical mastec[t]omy was performed." *Richard L. Nash*, BVA 92–01 533, at 3 (Nov. 3, 1992). Second, pursuant to 38 C.F.R. § 3.311, the BVA has repeatedly ordered dosage estimates of the appellant's in-service exposure to ionizing radiation, predicated on the manifestation of breast cancer. *See Nash*, BVA 92–01 533, at 3 (Apr. 8, 1997); *Richard L. Nash*, 92–01 533, at 3 (Jan. 31.1996); *Richard L. Nash*, BVA 92–01 533, at 2–3 (June 20, 1994); 38 C.F.R. §§ 3.311(a)(1), (b)(2)(iii).

As to whether the appellant was present in Hiroshima, the Secretary stated in Response 1 that "the BVA accepted the [appellant's] averments that he was present in Hiroshima on one occasion when his unit told him to go to the Hiroshima area on a salvage mission for aluminum sheets." Response 1 at 6.

As to whether such presence in Hiroshima constituted "participation" in the "occupation of Hiroshima or Nagasaki, Japan, by United States forces," we note the following statements by the Secretary in Response 2:

> [ (1) ] [T]he argument that an ongoing presence is required to meet the requirements of § 3.309(d)(3)(vi) may not be supported by research compiled by the [Defense Nuclear Agency (DNA) ].... [I]t appears that troop movement in the region was fluid and assignments shifted quickly, indicating that the *duties* of the occupation forces *did not* necessarily *require a continuing presence.*

> [ (2) ] Additionally, there is little support in the legislative history of Pub.L. No. 100–321 for an interpretation of § 3.309(d)(3)(vi) [as] requiring a continuing presence within a ten-mile radius of Hiroshima or Nagasaki. Congressional debate on the measure suggests that *mere presence* in one of the named cities, and the resulting potential exposure to radiation, would be enough to trigger the presumption....

> [ (3) ] Given Congress' focus on whether a veteran was exposed to radiation, rather than the level at which he or she was exposed, a requirement of an *ongoing presence* within a ten-mile radius of Hiro-

shima or Nagasaki in order to satisfy 38 C.F.R. § 3.309(d)(3)(vi) may go somewhat *beyond what was contemplated in the legislative history* of Pub.L. No. 100–321.

. . . .

[ (4) ] Turning to the regulation itself, the Secretary agrees that the *plain language of the definition* of "occupation of Hiroshima and Nagasaki" in § 3.309(d)(3)(vi) may, arguably, be *sufficiently broad to encompass the [appellant's ] duties in Hiroshima . . . .*

[ (5) ] . . . The Secretary agrees that this salvage operation by the Engineer Construction Group might constitute "official military duties" for purposes of the regulation. The Secretary also believes that this assignment might be considered to be in support of "occupation of territory" as set forth in § 3.309(d)(3)(vi). According to the [appellant], the aluminum sheets which he salvaged were used to cover the tops of tables in his unit's mess hall, thereby supporting the functioning of the engineer construction group to which he was assigned. Thus, unless the regulation may be read as requiring that the occupation functions supported be functions relating to the occupation of Hiroshima and Nagasaki, as opposed to Japan in general, the [*appellant's ] activities arguably bring him within the scope of the regulation.[ ]*

[ (6) ] In [Response 1] the Secretary noted that the *listed activities* in § 3.309(d)(3)(vi) was *prefaced with the term "such as."* The phrase "such as" is *"not a phrase of strict limitation,* but is a phrase of general similitude indicating *that there are includable other matters* of the same kind which are *not specifically enumerated* by the standard." . . . [T]he Secretary agrees that the phrase allows the [appellant] greater latitude in establishing that his unit was engaged in "military occupation functions" and that his duties in Hiroshima supported such functions.

Response 2 at 4–7 & n. 1 (emphasis added). With respect to item (6) above, the proposed-rule notice for § 3.309(d)(3)(vi), defined "occupation forces" as "*including* those military units that were officially assigned to perform the duties of occupation in and around the cities of Hiroshima and Nagasaki." 53 Fed. Reg. 50547, 50548 (1988) (emphasis added).

In light of the above, the language of the regulation appears to require only that the duties occur in Hiroshima or Nagasaki in support of military occupation functions that are not geographically limited to Hiroshima and Nagasaki. To hold otherwise and to limit military occupation functions to only those activities related to Hiroshima or Nagasaki would result in quite disparate and unfair results. Under such a construct, if the appellant, for example, had been sent from Osaka to Hiroshima where he had worked for a short time in constructing a mess hall table to be used in Hiroshima, he would clearly have participated in the occupation of Hiroshima. If, on the other hand, he had been "stationed" for several months in Hiroshima but had worked only on administrative matters involving Osaka, he would not have been involved in a military occupation function involving Hiroshima. In order to avoid this absurdity, a military occupation function that took place in Hiroshima or Nagasaki should not be restricted to activities related to Hiroshima or Nagasaki.

In making a determination that the appellant was not entitled to presumptive service connection pursuant to 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d), the Board failed to address these considerations. Thus, we would vacate the Board decision on the presumptive-service-connection issue and remand the matter for expeditious readjudication by the Board without further remand. *See* Veterans' Benefits Improvement Act (VBIA), Pub.L. No. 103–466, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court); *Friscia v. Brown,* 7 Vet. App. 294, 297–98 (1994) (requiring Secretary under VBIA § 302 to establish date for BVA decision).

### C. Extraordinary Writ

To the extent that the appellant has sought an extraordinary writ, we agree only with the majority's result that his May 14, 1997, petition should be denied because, under the result of the appeal that we propose, he has

not shown that he lacks an adequate means of obtaining a BVA decision on the question of presumptive service connection. *See Erspamer v. Derwinski,* 1 Vet.App. 3, 9 (1990). Indeed, we would direct that such an adjudication take place. *See Fee Agreement of Cox,* 10 Vet.App. at 374–75 (where direct appeal is available "mandamus would normally not be in order" unless "pursuing the normal appellate route would have been futile").

### D. Conclusion

Accordingly, for the foregoing reasons, we concur in the result with respect to the denial of the writ but respectfully dissent from the Court's failure to construe the appellant's petition as also being an NOA as to part of the BVA decision and then to remand the matter for an expeditious readjudication on the issue of presumptive service connection under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d). *See Friscia, supra.*

Abandoning this Court's traditional liberal rule of construction of pro se pleadings, the majority today returns with no guidance this 73-year-old ailing pro se appellant to a VA adjudication morass in which he has been embroiled for nine years and four BVA remands. His case deserves better. *Cf. Blount v. West,* 11 Vet.App. 34 (1998) (Court issues order one week after oral argument to require Secretary to advise Court within 10 days whether Secretary will afford equitable relief to ailing 98-year-old World War I widow after Court indicates inclination to hold for appellant on novel theory).