**Bruce W. EBERT, Petitioner,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Respondent.**

No. 92–1402.

United States Court of Veterans Appeals.

March 29, 1993.

Bruce W. Ebert, pro se.

James A. Endicott, Jr., Gen. Counsel, David T. Landers and Norman G. Cooper, Acting Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra, Washington, DC, were on the filings for respondent.

Before KRAMER, MANKIN and IVERS, Associate Judges.

KRAMER, Associate Judge:

Petitioner, Bruce W. Ebert, filed with this Court a motion for sanctions against the Department of Veterans Affairs (VA) (motion) on April 27, 1992, and a petition for writ of mandamus to the VA (petition) on October 23, 1992. We deny both the motion and the petition.

I.

The filings of the parties reveal the following relevant chronology of events. Petitioner submitted an application for compensation dated October 1, 1990, to the San Francisco VA Regional Office (RO). Motion, Exhibit 1. Receipt of the application was acknowledged in an October 17, 1990, letter to petitioner, which stated that "[t]here is no need for you to take any additional action at this time." Motion,

Exhibit 2. On June 6, 1991, the Board of Veterans' Appeals (BVA) issued its decision in the unrelated matter of the waiver of petitioner's home loan guaranty indebtedness. When petitioner telephoned the San Francisco VARO to inquire about the scheduling of an examination pursuant to his application for compensation, he was informed that his claims folder had been sent to the St. Petersburg VARO. Motion at 4; Petition at 7. Petitioner wrote letters dated July 10, 1991, to both the San Francisco VARO, requesting priority in the scheduling of his examination, and the St. Petersburg VARO, demanding that his file be returned to the San Francisco VARO. Petition, Exhibits 4 and 5. Petitioner also filed a second application for compensation dated July 24, 1991, with the San Francisco VARO. *Id.* at 8, Exhibit 6; Motion, Exhibit 4. The St. Petersburg VARO responded to petitioner's July 10, 1991, letter on August 1, 1991, and informed petitioner of the applicable VA appellate procedures:

> When an appeal to a decision made by the VA is made, the office of original jurisdiction, that office which made the original denial of the claim, is responsible for completing all appellate action until the appeal is resolved. Since your request for waiver was originally denied by this office, it was our responsibility to complete the appeal process.
>
> The ... [BVA] is required to review all evidence contained in both your loan file and your claims folder before making a final determination. Therefore, it was necessary for this office to obtain your claims folder from the San Francisco [RO] ... before your appeal was forwarded to the ... [BVA].
>
> As you know, your appeal was completed on June 6, 1991, and your records were returned to this office. Your records are now subject to review by the United States Court of Veterans Appeals [CVA] and must remain in this status for a period of 120 days from the date of the ... [BVA] decision or until October 6, 1991. During this period, your folders remain under lock and key, nothing maybe added or deleted from your fold-

ers and your folders may not be separated.

> If no appeal is filed with the ... [CVA] ..., your claims folder will be returned to the ... [RO] in San Francisco, California, and your loan file will be returned to the loan section in this ... RO.

Motion, Exhibit 3.

A letter dated September 9, 1991, from the San Francisco VARO, informed petitioner that they had received his claims folder from the St. Petersburg RO and "are undertaking the development of information pertinent to your claim for disability compensation." Petition, Exhibit 7. Also on September 9, 1991, the San Francisco VARO forwarded a Request for Physical Examination to the VA Medical Center (MC) in Reno, Nevada. Response of Respondent filed November 17, 1992, at 3, Attachment 1. Petitioner was informed in a letter dated September 10, 1991, from the San Francisco VARO that arrangements were being made for his physical examination. Motion, Exhibit 4.

On October 2, 1991, this Court received petitioner's Notice of Appeal in regard to the BVA decision of June 6, 1991. At the request of the Office of General Counsel (OGC), Washington, D.C., petitioner's claims folder was transferred to the OGC on November 14, 1991. Response of November 17, 1992, at 3. A letter dated December 15, 1991, from the San Francisco VARO, informed petitioner of this "temporary" transfer and stated: "Therefore, we are unable to ascertain whether or not you will be examined. When the record returns, you will be advised." Motion at 4, Exhibit 4.

Following a letter dated March 1, 1992, and several telephone calls from petitioner to the OGC, petitioner's claim file was copied and mailed to him. Petition at 9; Motion at 4–5, Exhibit 5; Response of November 17, 1992, at 6. On April 27, 1992, petitioner filed his motion for sanctions with the Court, alleging that the VA "has repeatedly and willfully prevented ... [him] from obtaining medical compensation benefits including medical care and prescription medication," Motion at 1, and re-

questing the Court to monetarily sanction the VA in order to "send a powerful message to the VA; that wrongful, egregious conduct will not be tolerated," *id.* at 7. Petitioner sent a letter dated June 22, 1992, to the Director of the San Francisco VARO, requesting the scheduling of his examination. Petition at 9, Exhibit 13.

The response of respondent, filed July 2, 1992, to petitioner's motion, states, inter alia:

> It is unfortunate that the petitioner's claims folder cannot be in two places at the same time. However, the counsel for the Secretary [of Veterans Affairs (Secretary)] had a continuing need for the claims folder during the course of the litigation. The realities of the present litigation dictated that the claims folder be retained in Washington, not only for the purpose of preparing the record on appeal, but also for the purpose of supplementing the record, if necessary, consulting other elements of VA regarding petitioner's compromise offer, exploring the possibility of remand, and responding to his petition for sanctions. Given the foregoing, the Secretary and his representatives have acted reasonably and in good faith.

Response of July 2, 1992, at 9.

The Director responded to petitioner's June 22, 1992, letter in a letter dated July 30, 1992, in which he confirmed that a copy of petitioner's claims file had been sent to petitioner and informed petitioner that his file was "currently with our General Counsel in Washington, D.C." Reply of Petitioner, Attachment 1. On August 21, 1992, petitioner's claim file was returned to the San Francisco VARO. Response of November 17, 1992, at 6. In a letter dated September 9, 1992, petitioner informed the Director of the San Francisco VARO that he had received a copy of his claim file and requested the scheduling of his examination. Petition at 10, Exhibit 14.

On October 23, 1992, petitioner filed with the Court a petition for writ of mandamus which states, inter alia, that the "willful, intentional and egregious conduct of personnel within the ... [VA] has caused a two year delay in the scheduling of medical appointments" and that the VA "has already demonstrated they have the ability to copy petitioner's file in order that more than one office can have it at the same time," and which requests the Court to issue a writ of mandamus to the VA ordering that "all medical examinations for petitioner be scheduled and conducted as soon as possible." Petition at 1–2, 10.

An attorney with the OGC contacted the San Francisco VARO on November 3, 1992, and was informed that in response to a telephone inquiry from the San Francisco VARO, the VAMC in Reno "stated that no Request for Physical Examination had been received." Response of November 17, 1992, at 6, Attachment 2. The attorney further informed the Court that "[o]n November 5, 1992, the VARO, San Francisco, California forwarded another Request for Physical Examination to the VAMC, Reno, Nevada.... [and that] [t]he VAMC, thereafter, scheduled a general physical examination and pulmonary function examination for December 3, 1992." *Id.*

On November 17, 1992, respondent filed a response to the petition for writ of mandamus which states, inter alia:

> No evidence of "unwillingness" or "failure" to schedule a physical examination was present. Any incidental delays which he may have experienced with respect to scheduling or obtaining a physical examination were undoubtedly the result of the multiple transfers of the claims folder, routine processing, evidentiary development, and adjudication, all of which, were necessitated by the concurrent development of the waiver of home loan guaranty indebtedness appeal and the claim for medical benefits and disability compensation at different locations.

Response of November 17, 1992, at 7–8. The response also states that as the examination has already been scheduled, the "controversy asserted by the veteran is moot." *Id.* at 8. The examinations of petitioner were conducted as scheduled on December 3, 1992, at the VAMC in Reno, Nevada. Reply of Petitioner at 1–2.

## II.

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C.A. § 1651(a) (West 1991), and pursuant to the Court's own appellate jurisdiction which includes compelling action "unreasonably delayed" by the Secretary or the VA, 38 U.S.C.A. § 7261(a)(2) (West 1991). *See Erspamer v. Derwinski*, 1 Vet.App. 3 (1990). Before a writ of mandamus will issue, petitioner must satisfy the Court that he is clearly entitled to the writ and that he lacks adequate alternative means to obtain the requested relief. *Id.* at 9. As to the first prong, the Court in *Erspamer* stated:

> The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; *but when they refuse to act in a case at all, ... a mandamus may be issued to compel them.*

*Id.* (emphasis added) (quoting *United States v. Black*, 128 U.S. 40, 48, 9 S.Ct. 12, 14, 32 L.Ed. 354 (1888)).

In light of the uncontested evidence that the examination was conducted as scheduled on December 3, 1992, and that the Secretary has thus acted, petitioner has failed to show clear entitlement to the writ and the petition is denied as moot. *See Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).

## III.

This Court has express statutory authority to punish contempt of its authority pursuant to 38 U.S.C.A. § 7265 (West 1991) under the following circumstances:

> (1) misbehavior of any person in ... [the Court's] presence or so near thereto as to obstruct the administration of justice;
>
> (2) misbehavior of any of its officers in their official transactions; or
>
> (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

38 U.S.C.A. § 7265(a). In addition, the Court has the power to sanction those who abuse the judicial process under the "inherent power of the federal courts." *See Jones v. Derwinski*, 1 Vet.App. 596, 606 (1991) (citing *Chambers v. NASCO, Inc.*, — U.S. —, —, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)). In each case, the Court "must take care to determine that the conduct at issue actually abused the judicial process." *See Jones*, 1 Vet.App. at 607 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)). Moreover, a finding that the conduct at issue constituted or was tantamount to bad faith is a precondition to imposing sanctions under the Court's inherent power. *See Chambers*, — U.S. at —, 111 S.Ct. at 2135 (citing *Roadway Express*, 447 U.S. at 767, 100 S.Ct. at 2464); *United States v. Wallace*, 964 F.2d 1214, 1219 (D.C.Cir.1992); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2nd Cir.1991).

The Court finds the two-year delay inexcusable and the Secretary's reasons for the delay without merit. However, as to the Court's statutory contempt authority, the Secretary's conduct neither constitutes "misbehavior" as contemplated by (1) and (2), nor "disobedience or resistance" as contemplated by (3), 38 U.S.C.A. § 7265(a), and, as to the Court's inherent power to impose sanctions, the Court finds that the Secretary's conduct does not rise to bad faith. Nevertheless, the Secretary is now on notice as to the inexcusability of such conduct. In the future, the Court may deem that inexcusable delays, in appropriate cases, meet the prerequisite of bad faith necessary to the Court's imposition of sanctions under its inherent authority.

## IV.

For the reasons stated, the motion and the petition are denied.