# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 04-0812

Mark R. Lippman, Appellant,

v.

R. James Nicholson,
Secretary of Veterans Affairs, Appellee.

Ronald E. Hood, Intervenor.

On Appeal from the Board of Veterans' Appeals

(Argued February 22, 2007                    Decided    April 24, 2007  )

*Arie M. Michelsohn*, of Washington, D.C., argued the case for the appellant. *Mark R. Lippman*, of La Jolla, California, was on the brief for the appellant.

*Thomas E. Sullivan*, of Washington D.C., argued the case for the appellee. *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Edward V. Cassidy*, *Jr*., Deputy Assistant General Counsel; and *Gayle E. Strommen*, all of Washington, D.C., were on the brief for the appellee.

*John E. Howell*, of Washington, D.C., argued the case and was on the brief for Ronald E. Hood as intervenor.

Before KASOLD, MOORMAN, and SCHOELEN, *Judges*.

KASOLD, *Judge*: Attorney Mark R. Lippman appeals a January 5, 2004, decision of the Board of Veterans' Appeals (Board) that denied Department of Veterans Affairs (VA) payment of attorney fees from past-due benefits. The Board found that Mr. Lippman was discharged by his client during the processing of his appeal and concluded that he was not eligible for a fee award pursuant to his contract with his client. To reach this conclusion, the Board determined that the law of the State of Colorado governed the contract and precluded quantum meruit recovery by a discharged attorney unless the contract had a provision explicitly permitting it. The Board also

determined that even if quantum meruit recovery were permissible, Mr. Lippman's efforts would not warrant an award. Because Federal rather than state law controls attorney-client contracts such as the one here at issue, the Board's decision will be set aside and the matter remanded for further adjudication.

## I. BACKGROUND

Veteran Ronald E. Hood served on active duty in the U.S. Army from November 1969 to April 1970. His claim for service connection for post-traumatic stress disorder (PTSD) was denied in an April 2000 Board decision that he appealed to the Court. Mr. Hood entered into a "Contingent Fee Contract" with Mr. Lippman that included representation at the Court and in any follow-on administrative proceeding. The contract stated in part:

> **SCOPE AND DUTIES.** Client hires Attorney to provide pro bono legal services in connection with **appeal or petition to U.S. Court of Veterans Appeals** under the terms and conditions set forth in the Equal Access to Justice Act. Attorney shall provide the following services: **All services necessary to prosecute appeal or petition to the U.S. Court of Appeals for Veterans Claims.** As a result of a decision by the U.S. Court of Veterans Appeals, the veteran's case may be remanded and the Board of Veterans' Appeals' previous decision vacated. In the event of a court-ordered remand, this agreement shall include representation of the veteran by the Attorney at both the Board of Veterans' Appeals as well as any Regional office of the Department of Veterans Affairs, based upon the contingent fee arrangement contained herein. . . .
>
> **CONTINGENT FEE (VETERANS ADMINISTRATION CASES).** Client agrees to pay a fee equal to twenty percent (20%) of the total amount of any past-due benefits awarded to Client, to include veteran, dependent or survivor benefits; on the basis of the Client's claim following a remand order from the United States Court of Veterans Appeals, and not in connection with the pro bono appeal to the U.S. Court of Veterans Appeals. . . .

Record (R.) at 174-75.

During the processing of Mr. Hood's appeal, the Secretary moved to have the matter remanded for consideration of the newly enacted Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, 114 Stat. 2096. On behalf of Mr. Hood, Mr. Lippman opposed the remand because "there are other bases to remand the Board decision," and because the Secretary's motion

2

"is nothing short of a preemptive maneuver to cut off appellant's potential rights to [Equal Access to Justice Act (EAJA)] fees." Supplemental Record (Supp. R.) at 6. In March 2001, the Court remanded the case to the Board for consideration of the VCAA.

Mr. Lippman thereafter sought and secured from the Board expeditious processing of Mr. Hood's PTSD claim. The Board remanded Mr. Hood's PTSD claim to the regional office (RO) for compliance with the VCAA and for further development, and Mr. Lippman subsequently submitted a legal memorandum in support of Mr. Hood's claim.

In July 2001, Mr. Hood entered into an "Attorney-Client Fee Contract" with attorney John E. Howell. This contract revoked "all prior powers of attorney for representation that may have been filed with the U.S. Court of Veterans Appeals or the U.S. Department of Veterans Affairs by any other attorney, agent, or service organization representative." R. at 180. It also provided a contingent fee of 20 percent to be paid directly by the Secretary to Mr. Howell, should Mr. Hood be awarded past-due benefits.

In October 2001, Mr. Hood's claim for service connection for PTSD was granted with past-due benefits totaling $202,597.78. Twenty percent–$40,519.56–was withheld for possible attorney fees. Initially, the RO awarded each attorney $20,259.78, but a decision review officer (DRO) determined that Mr. Howell had not timely filed his fee agreement and was therefore not eligible for an award, and Mr. Howell subsequently waived any right to attorney fees payable by the Secretary from the past-due benefits awarded to Mr. Hood. As noted at the outset, the January 2004 Board decision now on review concluded that the attorney fee contract was governed by Colorado law and that Mr. Lippman was not entitled to quantum meruit because the contract did not specifically authorize such recovery. The Board further found that even if the contract had provided for such recovery, Mr. Lippman's efforts nevertheless would not warrant a fee. With regard to whether Mr. Lippman's efforts warranted quantum meruit, if applicable, the Board stated:

> [Q]uantum meruit involves a balancing of the equities between the parties in order to avoid unjust enrichment to a party. Here, the Contract between the veteran and the attorney was terminated prior to the October 2001 rating decision which granted service connection for PTSD. Although the attorney was the veteran's representative when the Court vacated the April 2000 Board decision, the Court's March 2001 Order reflects that the Board's decision was vacated and remanded solely for consideration of the impact of the VCAA which was enacted subsequent to the Board's decision.

3

Further, this Order was pursuant to appellee's motion, which the attorney opposed. Based on these facts, it does not appear that recovery under the theory of quantum meruit would be warranted.

R. at 13.

On appeal to the Court, Mr. Lippman argues that state law does not govern the determination of eligibility for payment of attorney fees under section 38 U.S.C. § 5904 and 38 C.F.R. § 20.609 (2006).[1] The Secretary asserts that the Board's decision should be remanded because it fails to provide an adequate statement of reasons or bases as to why state law, as opposed to Federal law, governs the determination of eligibility. The Secretary also contends that if Federal law does apply, Mr. Lippman's claim should be remanded for the RO to make the determination of eligibility under Federal law.

The intervenor, Mr. Hood, argues through counsel that *Scates v. Principi*, 282 F.3d 1362 (Fed. Cir. 2002), controls and that "Mr. Lippman's right to receive the full [20] percent of past[-]due benefits would arise only if [Mr.] Lippman continued as [Mr.] Hood's attorney until the case was successfully completed." Intervenor's Brief (Br.) at 8; *see Scates*, 282 F.3d at 1365. Mr. Hood's brief also includes a motion for sanctions against Mr. Lippman.

## II. DISCUSSION

### A. Choice of Law

Although the Board addressed the United States Court of Appeals for the Federal Circuit (Federal Circuit) opinion in *Scates*, it focused on the jurisdictional issue presented in *Scates*[2] as well as the Federal Circuit's conclusion that a discharged attorney is not entitled to direct payment of 20 percent of past-due benefits but may be entitled to receive a fee that reflects his or her contributions. *See* R. at 11-12; *see also Scates*, 282 F.3d at 1366-67. In finding that state law controls whether a

---

[1] In his brief, Mr. Lippman also argues that assuming federal law controls, an attorney's contingency fee interest vests upon a successful remand from the Court, regardless of whether the attorney continues to represent the claimant at the VA level. However, Mr. Lippman's counsel rejected this argument at oral argument.

[2] The Federal Circuit concluded that pursuant to statute and regulation, the RO is "the appropriate agency initially to decide [an] attorney fee claim" and the Board may review the fee for reasonableness. *Scates*, 282 F.3d at 1368; *see also* 38 U.S.C. §§ 511(a); 5904(c)(2); 38 C.F.R. § 20.609(e).

discharged attorney is entitled to a fee that reflects his or her contributions or how that fee might be determined, however, the Board failed to consider the discussion in *Scates* that Federal law generally applies to the attorney-client fee agreement for representation with regard to VA claims, and further failed to note that this was the underlying basis for the conclusion in *Scates* that a discharged attorney is not entitled to the full 20 percent fee, but may receive only a fee reflecting his or her contributions. *See Scates*, 282 F.3d at 1369 ("Ordinarily state law controls the attorney-client relationship. . . . Here, however, a federal statute provides for and governs the twenty percent contingent fee arrangement and the Secretary's payment of the fee to the attorney out of the proceeds of the past benefits awarded.").

Federal law and regulation set out numerous requirements regarding representation of veterans and attorney fee agreements in VA claims matters. Pursuant to section 5904, the Secretary may recognize individuals as agents or attorneys for VA claims purposes and may require that individuals "show that they are of good moral character and in good repute, are qualified to render claimants valuable service, and otherwise are competent to assist claimants in presenting claims." 38 U.S.C. § 5904(a). The Secretary may suspend or exclude an individual from further practice before VA if the Secretary finds that such individual

> (1) has engaged in any unlawful, unprofessional, or dishonest practice;
> (2) has been guilty of disreputable conduct;
> (3) is incompetent;
> (4) has violated or refused to comply with any of the laws administered by the Secretary, or with any of the regulations or instructions governing practice before the Department; or
> (5) has in any manner deceived, misled, or threatened any actual or prospective claimant.

38 U.S.C. § 5904(b); *see* 38 C.F.R. § 20.609(j).

Furthermore, section 5904 authorizes a recognized attorney to charge a fee in the case of services provided after the Board makes a final decision in a case, provided the attorney is retained within a one-year period after the Board decision and a copy of the fee agreement is timely filed with the Board. *See* 38 U.S.C. § 5904(c)(1); 38 C.F.R. § 20.609(c)(1), (g). Fees may be based on a fixed rate, an hourly rate, or a percentage of benefits recovered (i.e., a contingent fee) (*see* 38 C.F.R. § 20.609(e)), and the claimant and attorney may enter into a fee agreement providing that payment

5

will be made directly to the attorney by the Secretary out of any past-due benefits awarded if the following conditions are met:

> (i) The total fee payable (excluding expenses) does not exceed 20 percent of the total amount of the past-due benefits awarded,
> (ii) The amount of the fee is contingent on whether or not the claim is resolved in a manner favorable to the claimant or appellant, and
> (iii) The award of past-due benefits results in a cash payment to a claimant or an appellant from which the fee may be deducted. . . .

38 C.F.R. § 20.609(h)(1); *see* 38 U.S.C. § 5904(d)(1), (2)(A).

The fee may not exceed 20 percent of past-due benefits and may be reduced by the Board if deemed excessive or unreasonable. *See* 38 U.S.C. § 5904(c)(2), (d)(1); 38 C.F.R. § 20.609(h)(1)(i). Pursuant to regulation, a contingent fee is presumptively reasonable if it is limited to 20 percent of past-due benefits (*see* 38 C.F.R. § 20.609(f)), but the regulation also provides a host of factors to consider when the Board assesses whether the fee is reasonable, to wit:

> (1) The extent and type of services the representative performed;
> (2) The complexity of the case;
> (3) The level of skill and competence required of the representative in giving the services;
> (4) The amount of time spent on the case;
> (5) The results the representative achieved, including the amount of any benefits recovered;
> (6) The level of review to which the claim was taken and the level of the review at which the representative was retained;
> (7) Rates charged by other representatives for similar services; and
> (8) Whether, and to what extent, the payment of fees is contingent upon the results achieved.

38 C.F.R. § 20.609(e).

When there is a comprehensive Federal statute and corresponding regulation governing a matter, there generally is no need to look to state law. *See NLRB v. Natural Gas Util. Dist. of Hawkins County, Tenn.*, 402 U.S. 600, 603 (1971) ("'There are, of course, instances in which the application of certain federal statutes may depend on state law. . . . But this is controlled by the will of Congress. In the absence of a plain indication to the contrary, however, it is to be assumed when Congress enacts a statute that it does not intend to make its application dependent on state law.'" (quoting *NLRB v. Randolph Elec. Membership Corp.*, 343 F.2d 60, 62 (4th Cir. 1965))); *see also*

6

*Augustine v. VA*, 429 F.3d 1334, 1342 (Fed. Cir. 2005) ("Given the statutory and regulatory silence [in the fee-shifting statute], the presumption here again is that federal law does not incorporate state standards."). Moreover, the need for uniformity of attorney regulation in Federal practice has been recognized in other forums. *See Sperry v. Fla. ex rel. Fla. Bar*, 373 U.S. 379, 401 (1963) (stating that applying state licensing requirements to attorneys practicing before the U.S. Patent Office would have a "disruptive effect" on representation); *Augustine*, 429 F.3d at 1341 ("It would indeed adversely affect proceedings before federal administrative agencies if state licensing rules were applied, since the pool of available attorney representatives would be severely impaired."); *Sosebee v. Rath*, 893 F.2d 54, 56-57 (3rd Cir. 1990) ("There is a strong interest in maintaining uniformity in maritime law. . . . This interest would be undermined if the availability of attorneys' fees depended upon where the plaintiff filed suit.").

Not only is there a comprehensive Federal statute, a stated purpose behind section 5904 is to provide for the payment of reasonable fees to attorneys in VA claims matters. *See* Veterans Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988) (preamble) (stating that a purpose of the Act was to "provide for the payment of reasonable fees to attorneys for rendering legal representation to individuals claiming benefits under laws administered by the Veterans' Administration"). This purpose could be hampered if state law were applied to attorney-client contracts for representation regarding VA compensation claims. For example, the application of provisions such as the Colorado law that precludes quantum meruit when a client discharges an attorney and the contract does not specifically state that quantum meruit is permitted upon such discharge (*see Dudding v. Norton Frickey & Associates*, 11 P.3d 441, 448 (Colo. 2000)) could discourage attorneys from representing veterans who reside in states other than the state where the attorney practices. We find no intent, explicit or implicit, in statute or regulation to so limit representation; indeed, the intent is to the contrary–to ensure that veterans have access to representation. By providing for direct payment of attorneys, for example, the statutory scheme advances this goal. *See* VJRA, *supra*; *In re Wick*, 40 F.3d 367, 369 (Fed. Cir. 1994) ("With the passage of the VJRA, Congress repealed the $10 fee limitation and permitted claimants to enter into fee agreements with attorneys and agents representing them, provided the agreement met specific requirements."). Furthermore, the legitimate concern of the states in ensuring their citizens are not

7

taken advantage of in contracting situations is significantly lessened, if not eliminated, in the veterans-claim context where direct payment of attorney fees is limited by law to 20 percent of past-due benefits, and is further limited to a reasonable fee under the circumstances of the case.

Therefore, we conclude that the Board erred in determining that state law governs Mr. Lippman's eligibility for the payment of attorney fees from past-due benefits. *See Smith v. Gober*, 14 Vet.App. 227, 230 (2000) ("This Court reviews questions of law de novo without any deference to the Board's conclusion of law.").

### B. Quantum Meruit or Reasonable Fee

Proper application of the Federal statutory and regulatory provisions provides a mechanism for resolving the situation presented by this case. When an attorney representation contract is terminated but the attorney claims entitlement to a portion of the past-due benefits awarded, the RO should evaluate whether he or she is "eligible" to collect the fee, and then, upon objection of either party or on the Board's own initiative, the Board may review the fee for reasonableness using the factors set out in *Scates* and § 20.609(e). *See Scates*, 282 F.3d at 1367 (stating that the determination of the appropriate fee to be paid to an attorney involves both entitlement to and reasonableness of the fee and noting that the line between the two is not necessarily clear); *id*. at 1368-69 (listing a number of factors to be considered in connection with a discharged attorney's claim for fees, including the reason for termination, whether the fee should reflect the proportion of the total days spent on the case, the number of hours spent on the case compared to the hours expended by the successor attorney, and whether quantum meruit is available); *see also* 38 U.S.C. § 5904(c)(2); 38 C.F.R. § 20.609(e).

Although the Board rejected a fee award in this case based on its application of state law, it nevertheless alternatively concluded that even if quantum meruit recovery were permissible, Mr. Lippman would not be entitled to an award. The Board viewed quantum meruit as involving the "balancing of the equities between the parties in order to avoid unjust enrichment to a party." R. at 13. However, it is not clear whether the Board's assessment of quantum meruit took into consideration the factors laid out in *Scates* or the reasonableness factors in § 20.609(e), rendering its statement of reasons or bases inadequate. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995)

8

(holding that the Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court").

## C. Sanctions

As to the motion for sanctions against Mr. Lippman, counsel for Mr. Hood advised the Court that he included the motion at the request of his client, and that he had no supporting authority as to why sanctions would be appropriate in this case. *See Perry v. West*, 11 Vet.App. 319, 322 (1998) (stating that a "'finding that the conduct at issue constituted or was tantamount to bad faith is a precondition to imposing sanctions under the Court's inherent power'" (quoting *Ebert v. Brown*, 4 Vet.App. 434, 437 (1993))); *Jones v. Derwinski*, 1 Vet.App. 596, 607 (1991) (stating that before imposing sanctions, the Court must "take care to determine that the conduct at issue actually abused the judicial process"). Counsel is reminded that he controls the representation of issues before the Court. *See* ABA MODEL RULES OF PROF'L CONDUCT R. 1.2 cmt. 2 (2006) ("Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters."); U.S. VET. APP. R. ADM. & PRAC. 4(a) (adopting the Model Rules of Professional Conduct as the disciplinary standard for practice). Not only was there no basis for seeking sanctions, inclusion of a motion within a brief is not permitted. *See* U.S. VET. APP. R. 28(e) ("A motion may not be included as part of any brief; the Court will not act on any motion so included."). Counsel is cautioned to take care to ensure in all proceedings that his actions are consistent with the ethical and professional duties of an officer of the court.

## D. Remedy

Although Mr. Lippman argues for reversal, "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate," remand and not reversal is appropriate. *Tucker v. West*, 11 Vet.App. 369, 374 (1998). Mr. Lippman may present additional evidence and argument in support of the matter remanded, which must be considered by the Board or the RO, as appropriate. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002); *see also Scates*, 282 F.3d at 1368. This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

## III. CONCLUSION

Accordingly, the Board's January 5, 2004, decision is SET ASIDE and the matter REMANDED for further adjudication consistent with this opinion.