NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-7033

GENE S. GROVES,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Gene S. Groves, of Shafter, Texas, pro se.

Austin M. Fulk, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were Jeanne E. Davidson, Director, and Franklin E. White, Jr., Assistant Director.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr.

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-7033

GENE S. GROVES,

Claimant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
in 08-2415, Chief Judge William P. Greene, Jr.

_____

DECIDED:  May 7, 2009

_____

Before  NEWMAN, SCHALL and BRYSON, Circuit Judges.

PER CURIAM.

DECISION

Gene S. Groves appeals from an order of the United States Court of Appeals for

Veterans Claims ("the Veterans Court") denying his petition for extraordinary relief in the

nature of a writ of mandamus.  We affirm.

BACKGROUND

Mr. Groves served on active duty in the U.S. military between 1970 and 1971. In 1972, the Veterans Administration, now the Department of Veterans Affairs ("DVA") determined that Mr. Groves was entitled to benefits for a tender scar that resulted from an injury he sustained during service. Mr. Groves later sought additional benefits based on that injury. In December 2005 the Board of Veterans' Appeals claims found no clear and unmistakable error in the disability rating Mr. Groves had received for his scar and also denied his challenge to the disposition of his claim of post traumatic stress syndrome. At the same time, the Board remanded a number of other claims by Mr. Groves to the DVA's Appeals Management Center for the purpose of securing additional medical evidence relevant to those claims. Mr. Groves took two related appeals to the Veterans Court from the Board's 2005 decision.

On April 7 and July 17, 2008, Mr. Groves submitted letters to the Veterans Court complaining that his remanded claims were "not receiving the expeditious treatment required." Mr. Groves noted that the DVA's explanation for the delay was that the regional office did not have access to Mr. Groves' claims file because it was needed for use in connection with his pending appeal before the Veterans Court. Relying on the Veterans Court's decision in Ebert v. Brown, 4 Vet. App. 434 (1993), Mr. Groves argued that the DVA's explanation for the delay was inadequate.

The Veterans Court construed his letters as requesting extraordinary relief in the nature of a writ of mandamus. In light of the DVA's explanation that the delay in processing the remanded claims was "due to the claims folder being unavailable to the VA regional office because it was located with the VA General Counsel for litigation

pending before the Court," the court held that Mr. Groves "has not demonstrated that the Secretary is arbitrarily refusing to act" and denied mandamus relief.

## DISCUSSION

We review the denial of a petition for a writ of mandamus by the Veterans Court for abuse of discretion. Lamb v. Principi, 284 F.3d 1378, 1384 (Fed. Cir. 2002). In order for mandamus to issue, the petitioner must show a clear and indisputable right to the writ and must have no other adequate means to obtain the relief to which he is entitled. See Cheney v. U.S. Dist. Court for the Dist. of Columbia, 542 U.S. 367, 380-81 (2004). The Veterans Court has held that when undue delay is the basis for a mandamus petition, the petitioner must demonstrate "that the alleged delay is so extraordinary, given the demands on and resources of the Secretary, that it is equivalent to an arbitrary refusal by the Secretary to act." Ribaudo v. Nicholson, 20 Vet. App. 552, 555 (2007) (en banc).

1. In its 1993 decision in Ebert v. Brown, 4 Vet. App. 434 (1993), another case involving delay in processing a veteran's claims while an appeal was pending before the court, the Veterans Court noted that the Secretary had offered as an excuse for the delay the fact that the veteran's claims file was being used in connection with litigation before the court. The court rejected that explanation as insufficient. It stated:

> The Court finds the two-year delay inexcusable and the Secretary's reasons for the delay without merit. . . . [T]he Secretary is now on notice as to the inexcusability of such conduct. In the future, the Court may deem that inexcusable delays, in appropriate cases, meet the prerequisite of bad faith necessary to the Court's imposition of sanctions under its inherent authority.

Id. at 437.

Several years later, the DVA's Office of General Counsel ("OGC") promulgated a policy in response to the Veterans Court's expression of concern about delays attributable to veterans' claims files being retained by the Office of General Counsel in connection with ongoing litigation before the court. The Veterans Court had asked the Secretary "to explain whether separate copies of the claims file could be used in VA proceedings on claims different from those pending at the Court in order that all proceedings could move forward concurrently." Henderson v. Brown, 10 Vet. App. 272, 276-77 (1997) (describing proceedings in Neumann v. Brown, U.S. Vet. App. No. 96-1726 (Apr. 4, 1997)). The Secretary responded that "effective June 1, 1997, the [DVA General Counsel's Office] 'returns the original claims file to the [DVA regional office] as soon as possible after the 30-day period for supplementing the ROA [record on appeal] without leave of Court, pursuant to Rule 11(b), has expired' and that, if the claims file is needed at the OGC at the same time it is needed at the RO [DVA regional office], a copy of the claims file may be used by the RO or the OGC." Mason v. Gober, U.S. Vet. App. No. 96-223 (Aug. 13, 1997). The Secretary told the Veterans Court that the new procedures would include "earlier release of the claims file by the [OGC] and strategic copying of the claims files by the ROs and the Board for use in remands and motions for reconsideration." Perry v. West, 11 Vet. App. 319, 333 (1998). The court explained that the new procedures were "designed to alleviate the difficulties that arise when an appellant's claims file is needed in multiple locations." Bradley v. West, U.S. Vet. App. No. 97-910 (Jan. 7, 1998).

While the DVA's policy is clear that when a claims file is needed for processing pending claims the file will be returned to the regional office after the record on appeal

process has been completed in the Veterans Court appeal, it is less clear what process is followed in the event of lengthy delays in the appeal before the record on appeal has been prepared. Although, as noted, the Secretary has represented that a copy of the claims file could be made "if the claims file is needed at the OGC at the same time it is needed at the RO," neither the policy as articulated nor the Veterans Court's decisions make clear how the DVA has applied that policy in cases involving lengthy delays in the early stages of an appeal before the Veterans Court.

While we assume that the Secretary continues to adhere to the representation made to the Veterans Court regarding the preparation of a copy of the claims file in cases of unusual delay when the file is needed by the regional office, we cannot conclude based on the record before us that the Secretary violated that policy and that the Veterans Court erred in failing to grant a writ of mandamus. Although Mr. Groves filed his notice of appeal in 2006, the supplemental record on appeal in this case had still not been resolved as of the date that the Veterans Court issued the ruling on mandamus that is at issue in this appeal. While the resulting delay has been lengthy, we note from the docket sheet that numerous procedural issues have had to be resolved in the pre-briefing stage of the appeal. We assume that, consistent with the DVA's representation to the Veterans Court in 1997, the claims file will be returned to the regional office when that occurs, and that if there is a significant further delay in resolving questions regarding the supplemental record on appeal, the Secretary will prepare a copy of the claims file so that the regional office can address the pending remand claims. If those procedures are followed, they would appear to satisfy the Veterans Court's post-Ebert procedure for accommodating the competing interests in

compiling a complete record for appeal and allowing the remand proceedings to go forward with reasonable promptness. Under these circumstances, we hold that the Veterans Court did not abuse its discretion in holding that Mr. Groves has not shown a clear and indisputable right to relief by way of mandamus.

2. Mr. Groves also contends that by "assigning all claims raised by an individual to the same judge," the Veterans Court has violated his due process rights. His argument, however, is based on the assumption that his motions have all been assigned to the same judge. In fact, multiple judges have considered his various motions. Moreover, this issue is not properly before this court on appeal, as it was not the subject of his request for mandamus from the Veterans Court.

3. Mr. Groves further asserts that the Veterans Court's failure to require the DVA to produce evidence that it has not "acted expeditiously" has deprived him of his rights under the Due Process Clause of the Fifth Amendment to the U.S. Constitution. In fact, Mr. Groves has access to all of the documents he needs to pursue his claim that the DVA has not acted quickly enough.

4. Finally, Mr. Groves complains about the rating he was assigned for his Post Traumatic Stress Disorder claim. That issue was not raised in his request for mandamus and is therefore not properly before this court. Nor is it a proper issue for a writ of mandamus, as Mr. Groves has recourse to challenge his rating through the appellate process. See Lamb, 284 F.3d at 1384 ("extraordinary writs cannot be used as substitutes for appeals, even though hardship may result from delay") (quoting Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383 (1953)).