# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-3317

HUGH D. COX, JR., APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 16, 2021                         Decided May 12, 2021)

*Kenneth M. Carpenter*, of Topeka, Kansas, for appellant.

*Omar Yousaf*, with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for appellee.

Before ALLEN, TOTH, and FALVEY, *Judges*.

ALLEN, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a concurring opinion.

ALLEN, *Judge*: This case is about attorney fees. But it's also a cautionary tale about the consequences of one's choices. In its May 7, 2019, decision on appeal, the Board of Veterans' Appeals denied appellant-attorney Hugh D. Cox any fee in connection with his representation of his client, veteran Leroy Brinkley. Why such an apparently harsh result? The answer: Mr. Cox's choices. Appellant first chose to enter into a contract with the veteran that eliminated appellant's ability to obtain a fee in quantum meruit if the veteran discharged him for "good and adequate cause." And second, in representing the veteran, appellant chose to act in a way that led the veteran to discharge him. In the decision before us, the Board determined that the veteran had discharged appellant for "good and adequate cause." And because the fee agreement appellant and the veteran entered into precluded the recovery of fees in quantum meruit in that circumstance, the Board concluded that no fee was due to appellant.

Appellant raises a host of arguments, but he doesn't challenge the Board's central conclusion that the veteran had "good and adequate cause" to terminate him. Nor does he contest the validity of the agreement barring him from recovering fees in quantum meruit. Instead, he

essentially contends that the Board was powerless to enforce the terms of the agreement he voluntarily entered into with his veteran-client. But, as we will explain, the Board acted well within its authority, and did not otherwise err, when it relied on the contractual phrase "good and adequate cause" to deny appellant any fee. In other words, the Board was empowered to hold appellant accountable for the choices he made in representing the veteran. Therefore, and because none of appellant's contentions have merit no matter how he frames them, we will affirm the Board decision before us.

## I. FACTS AND PROCEDURAL HISTORY

In August 1996, the veteran retained appellant to represent him in an appeal from an April 1996 Board decision that denied reopening of a claim seeking service connection for a stomach disorder.[1] When the veteran retained appellant, they entered into a fee agreement,[2] the first of three such agreements into which they would enter over the next several years. Specifically, the veteran and appellant entered in a second fee agreement in April 2000, and a third in April 2005.[3] For present purposes, all three agreements shared two important features. First, all agreements provided for direct payment by VA to appellant of 20% of any past-due benefits recovered.[4] Second, all agreements addressed payment of fees for the work appellant did before termination, if the veteran should discharge appellant. Specifically, each agreement provided that "[i]f the Client discharges Attorney without good and adequate cause after the Attorney has fully performed, substantially performed, or contributed in any way to the results finally obtained by the Client, the Client shall be liable for payment of the Attorney's fees and expenses [in] quantum meruit."[5]

From 1996 to 2007, the veteran's claims moved up to the Court, down to the Agency, up to the Court again, and back down to the Agency again. Appellant represented the veteran through

---

[1] Record (R.) at 8515-16. The specifics of the veteran's claims are not at issue or disputed in this case.

[2] *Id.*

[3] R. at 8076-78 (second agreement), 7148-50 (third agreement).

[4] R. at 8515 (first agreement), 8076 (second agreement), 7148-49 (third agreement).

[5] R. at 8515 (first agreement), 8077 (second agreement), 7148-50 (third agreement). "Quantum meruit" means "as much as he deserves." *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016). It is "a claim or right of action for the reasonable value of services rendered." *United Pac. Ins. Co. v. United States*, 464 F.3d 1325, 1329 (Fed. Cir. 2006) (quoting *quantum meruit*, BLACK'S LAW DICTIONARY 1276 (8th ed. 2004)).

much of that litigation. In April 1998, while the veteran's appeal remained pending before the Court, appellant submitted a medical opinion in support of the veteran's claims.[6] In a May 2000 memorandum decision, this Court vacated the Board's denial of the veteran's request to reopen his claim for service connection for "psychophysiological gastrointestinal reaction" and remanded the case.[7] In February 2001, the Board likewise remanded the veteran's claim for compliance with the Veterans Claims Assistance Act of 2000 and for readjudication of the request to reopen.[8] In an April 2003 Supplemental Statement of the Case, VA declined to reopen the veteran's claim.[9] When the claim returned to the Board, the Board denied it in a November 2004 decision.[10] In March 2005, on the veteran's behalf, appellant appealed to this Court.[11]

Apparently, while that appeal was pending at this Court, the veteran decided to change representation. In August 2005, the veteran appointed Disabled American Veterans as his representative.[12]

Eventually, in a March 2007 memorandum decision, this Court remanded the matter yet again.[13] And in December 2007 the Board, in turn, remanded the veteran's claims.[14]

As of April 2008, appellant still appeared to be under the impression that he was the veteran's representative.[15] That month, he sent a letter to VA notifying the Agency that the veteran was scheduled for a hearing before a decision review officer and that the veteran would not attend the hearing because he was "unable to travel this far without medical difficulties."[16]

On November 29, 2009, the veteran informed appellant that he was terminating their attorney-client relationship effective immediately, because appellant "rarely (if ever) return[ed]

---

[6] R. at 8311.

[7] R. at 8057-62.

[8] R. at 8011-25.

[9] R. at 7643-48.

[10] R. at 7281-7309.

[11] *See* R. at 6893 (listing appellant as counsel).

[12] R. at 7081.

[13] R. at 6890-93.

[14] R. at 6616-22.

[15] Though not directly relevant to our resolution of this appeal, we note that appellant apparently disregarded the veteran's change of representation, and we find that disregard concerning. Indeed, appellant's disregard provides additional support for the consequences flowing from how he has chosen to represent the veteran.

[16] R. at 6400-19.

[the veteran's] phone calls, and [appellant] . . . decline[d] [the veteran's] request for an in person hearing . . . , after which [the veteran] received an unfavorable decision."[17] Additionally, the veteran wrote that he "often receive[d] VA claim papers from [appellant] to complete, often without [appellant's] assistance."[18] In February 2010, appellant withdrew as the veteran's representative.[19] The veteran informed VA that, effective November 2009, appellant no longer served as his representative.[20] When, in April 2010, the Board sought to clarify the veteran's representation,[21] the veteran reiterated the complaints from his November 2009 letter to appellant.[22] In November 2010, the veteran executed a VA Form 21-22, appointing the American Legion as his representative.[23] The American Legion represented the veteran through the remainder of his proceedings with VA.[24]

After two more remand orders from the Board, one in 2011[25] and the other in 2012,[26] in July 2013 VA granted the veteran entitlement to "[s]ervice connection for depressive disorder, NOS (claimed as depression with his[tory] of gastrointestinal reaction) . . . with an evaluation of 50[%] effective February 16, 1993," and entitlement to a total disability rating based on individual unemployability (TDIU) effective October 17, 2001.[27] The RO based its findings on a November 14, 2012, examination.[28]

Our narrative now moves from the veteran's substantive claims to the ancillary issue of attorney fees related to VA's resolution of those claims. In July 2013, VA determined that a valid fee agreement between the veteran and appellant had existed and found that appellant was "eligible for a direct payment of fees by VA of $58,586.30" (i.e., 20% of the award of benefits past due to

---

[17] R. at 6015.

[18] *Id.*

[19] R. at 5942.

[20] R. at 5940.

[21] R. at 5933-34.

[22] R. at 5926-27.

[23] R. at 5832.

[24] R. at 5765, 5077, 4199.

[25] R. at 5764-76 (July 2011 Board reopening and remand).

[26] 5077-5110 (May 2012 SSOC).

[27] R. at 4199; *see* R. at 4197-4202.

[28] *See* R. at 4200.

the veteran).[29] In August 2013, the veteran disagreed with the RO's fee decision,[30] on the basis of appellant's poor and neglectful conduct as his attorney, which the veteran detailed, and the veteran asked that VA bar appellant from receiving fees for deficient work.[31] In a December 2013 Statement of the Case, VA continued the decision that the fee agreement was valid and that appellant was entitled to $58,586.30.[32] That same month, the veteran appealed to the Board, reiterating that appellant did not adequately represent him, and in March 2015, the Board provided him a hearing, at which the veteran and his son repeated the bases for discharging appellant.[33] In a July 2015 decision, the Board concluded that the requirements for payment of attorney fees in the amount of $58,568.30 had been met and that the fee was reasonable.[34] The veteran appealed to this Court, which, in a December 2017 memorandum decision, vacated the Board's July 2015 decision for failure to discuss the agreement's "good and adequate cause" provision and remanded the matter to the Board for readjudication.[35]

In the May 2019 decision on appeal, the Board reversed course and denied appellant any fees; it found that pursuant to the contract terms appellant was not entitled to the recovery of fees under quantum meruit because the veteran had discharged appellant for good and adequate cause.[36] The Board found that (1) all three fee agreements were valid;[37] (2) appellant was eligible for a fee related to the grant of service connection for depressive disorder, NOS;[38] and (3) appellant was not eligible for a fee related to the award of TDIU because there was no final Board decision on that issue.[39] Under the heading "Reasonableness," the Board walked through the regulatory presumption of reasonableness, which provides that fees limited to 20% of back benefits are

---

[29] R. at 4169-71.

[30] R. at 4120-24.

[31] *Id.*

[32] R. at 3710-26.

[33] R. at 3400-01 (Form 9), 3024-59 (hearing).

[34] R. at 2993-3007.

[35] R. at 159-64.

[36] R. at 8-25.

[37] R. at 17.

[38] *Id.*

[39] R. at 18; 38 C.F.R. § 20.609(c)(1)(i) (2007); *see* 38 C.F.R. § 14.636(c)(3)(i) (2019); 38 C.F.R. § 14.636(c)(2)(i) (2017).

reasonable; the Federal Circuit's holding in *Scates v. Principi*,[40] including that the presumption does not apply when an attorney is discharged; the *Scates* reasonableness factors; and the regulatory reasonableness factors.[41] The Board also noted this Court's remand instructions in the December 2016 memorandum decision.[42] And, after analyzing appellant's conduct in light of VA regulations and appellant's State bar rules providing the standard of conduct for attorneys,[43] the Board concluded as a factual matter that the veteran had "good and adequate cause" for discharging appellant, meaning he was not entitled to any fee under the contract between the veteran and appellant.[44] Thus, the Board found "a discussion as to whether the fees awarded were reasonable, or what amount of fees is reasonable, . . . unnecessary."[45] This appeal followed.

## II. PARTIES' ARGUMENTS

Before we get into the specifics of the parties' arguments, we can offer some helpful context by pointing out what we see as the parties' different legal premises. Otherwise, one could understandably think the parties talk past each other at times.

The legal premises concern the relationships among four concepts: (1) validity of a fee agreement, (2) eligibility of an attorney for direct payment of fees, (3) entitlement of an attorney to fees, and (4) reasonableness of fees. Appellant seems to start from one of two premises: either that validity, eligibility, entitlement, and reasonableness are somehow all the same thing;[46] or that validity and eligibility were the only issues here and the inquiry ended when those requirements were met.[47] On the other hand, the Secretary seems to premise his arguments on the understanding that the relevant inquiry comprises up to four distinct elements—validity, eligibility, entitlement,

---

[40] 282 F.3d 1362 (Fed. Cir. 2002).

[41] R. at 18-19.

[42] R. at 19.

[43] R. at 19-23.

[44] R. at 19.

[45] *Id.*

[46] *See* Appellant's Brief (Br.) at 9-13 (seemingly referring to validity, eligibility, entitlement, and reasonableness interchangeably); Secretary's Br. at 14 ("Throughout his brief, Appellant appears to conflate the separate and distinct concepts of validity of, eligibility for, entitlement to, and reasonableness of, a fee agreement ….").

[47] Appellant's Br. at 25-26.

and reasonableness—and that the analysis proceeds in that order.[48] If VA finds no validity, eligibility, or entitlement, he seems to say, then the inquiry is over and no direct payment of a fee is due without regard to reasonableness. Neither party, however, grounds his legal premise in existing law.

Now for the specifics. Appellant puts forth a number of theories about how the Board exceeded its authority or otherwise erred when it denied him direct payment of any fee. First, he argues that the scope of this Court's 2017 remand was narrow, limited to the question whether the veteran had good cause to discharge appellant, and that therefore the Board erred as a matter of law because it exceeded its authority when it revisited its 2015 decision's findings that had favored appellant.[49] Appellant further asserts that the Board's 2015 conclusions regarding the agreements' validity and appellant's entitlement are "res judicata" or the "law of the case."[50] Second, appellant argues that the Board misapplied 38 U.S.C. § 5904(d) when it concluded that appellant was not eligible for a fee based on the TDIU award and grant of service connection for depressive disorder, NOS, because TDIU is not a stand-alone claim.[51] Third, appellant argues that the Board lacked subject matter jurisdiction over the issue of reasonableness of appellant's fee because neither the veteran nor Office of General Counsel (OGC) sought review of that issue under 38 C.F.R. § 14.636 and thus OGC made no reasonableness determination in the first instance for the Board to review.[52] Fourth, appellant argues that the Board erred as a matter of law when it failed to apply the mandatory presumption of reasonableness for a 20% fee under 38 C.F.R. §§ 14.636(f) and 20.609(f) (2000), the law extant when the fee agreements were executed.[53] Fifth, related to the fourth argument, appellant argues that the Board erred when it relied on dicta in *Scates v. Principi*, which improperly interpreted the terms of the parties' fee agreement to reach its holding and exceeded the Federal Circuit's jurisdiction.[54] Sixth, appellant argues that the Board erred as a matter of law by exceeding its authority under 38 U.S.C. § 5904(c)(3)(A) when it denied, rather

---

[48] Secretary's Br. at 14.

[49] Appellant's Br. at 9-13.

[50] *Id.* at 12-13.

[51] *Id.* at 13-14.

[52] *Id.* at 14-16.

[53] *Id.* at 16-17.

[54] *Id.* at 17-23.

than reduced, the unreasonable fee.[55] Seventh, appellant argues that the Board erred when it failed to discuss reasonableness.[56] All in all, appellant's bottom line is, because the Board found the agreements valid in its 2015 decision, the inquiry is over; he is entitled to fees.[57]

What appellant does not argue is just as important as what he does. Appellant does not argue that the Board's "good and adequate cause" determination was wrong.

For his part, the Secretary makes a few overarching points. He insists that appellant's hyperbolic arguments only serve to distract this Court from "the simple issue of whether appellant is entitled to fees under the clear and binding terms of the contract he executed."[58] The Secretary argues that, because appellant presents no argument about his entitlement to attorney fees and fails to argue that the Board erred at all as to entitlement (much less clearly erred), appellant failed to meet his burden to demonstrate error on appeal.[59] Further, he argues that appellant's reasonableness arguments are of no moment because the Board found that a discussion of reasonableness was unnecessary given its no-entitlement finding. The Secretary points out that appellant improperly conflates the concepts of validity, eligibility, entitlement, and reasonableness, and ignores the Board's no-entitlement finding.

Beyond those points, the Secretary also responds to each of appellant's specific arguments in turn. First, the Board properly adjudicated the previously "ignored" issue of entitlement, fully complying with the terms of the Court's 2017 remand and fulfilling reasons-or-bases requirements. Contrary to appellant's assertions, the Board found the agreements valid and appellant eligible for an award but not entitled to one because he was discharged for "good and adequate cause." The Board did not reach reasonableness.[60] Second, appellant's TDIU-finality argument is inapposite and another "red herring."[61] No matter what else, appellant is not entitled to a fee. Third, the Board did not address reasonableness; its subject matter jurisdiction to address that issue is irrelevant.[62]

---

[55] *Id.* at 23.

[56] *Id.* at 24-25.

[57] *Id.* at 25-26.

[58] Secretary's Br. at 12.

[59] *Id.* at 13.

[60] *Id.* at 15-19.

[61] *Id.* at 19-20.

[62] *Id.* at 20-21.

The Secretary also notes several self-contradicting statements in appellant's brief.[63] Fourth and fifth, the Board did not analyze reasonableness. Though the Board set out the *Scates* factors, it ultimately concluded that application of those factors was unnecessary. Thus, appellant's fourth and fifth arguments are irrelevant, nothing more than two additional red herrings.[64] Sixth, the Board did not deny fees based on 38 U.S.C. § 5904(c)(3)(A); rather, the Board denied fees based on the contract's express terms. And the issue is not the correct amount of fees; it is entitlement to any fees.[65] Seventh, the Board found that a discussion of reasonableness was unnecessary given its no-entitlement finding.

Now that we know why we are here, we will roll up our sleeves and turn to the task at hand.

### III. ANALYSIS

The parties' arguments suggest that the legal landscape is a bit misty; we agree to some extent. But the fog that may be present ultimately does not obscure the correctness of the Board's decision. We recognize that the decisions from our Court and the Federal Circuit have, at times, not offered the clarity needed to see though the mist. That is understandable in some sense. After all, a court will decide the case before it, sometimes not paying the requisite attention to the so-called "big picture." With respect to attorney fees, and as the parties recognize, that "big picture" requires consideration of four concepts: the validity of a fee agreement; the eligibility of counsel for a fee; counsel's entitlement to a fee in a given situation; and, finally, the reasonableness of any fee that is ultimately awarded. We believe it will be helpful both in this case and more generally to consider how these distinct, but interrelated, concepts apply. So, we begin by explaining the statutory and regulatory structure concerning the award of attorney fees, paying particular attention to these four concepts, as well as to the particularly germane judicial decisions on this topic. We then turn to the facts we have before us, explaining why the Board's decision is correct and none of appellant's arguments have merit.

#### A. The Statutory and Regulatory Framework

Well-established principles govern how we determine the meaning of statutes and regulations. Statutory and regulatory interpretation are pure question of law that the Court reviews

---

[63] *Id.* at 20 & n.2, 22.

[64] *Id.* at 21-24.

[65] *Id.* at 24-26.

de novo.[66] We look to the plain meaning of statutes and regulations and, when there is a plain meaning, our job is simply to apply it.[67] But we do not read statutory and regulatory provisions in isolation. Instead, we interpret them in the context of the statutory and regulatory scheme as a whole.[68] With these principles in mind, we now turn to the statutory and regulatory scheme concerning an award of attorney fees under direct-payment fee agreements before VA. And we do so with special attention to the four critical concepts we discussed above: validity, eligibility, entitlement, and reasonableness.

While they agree on little else, the parties are on common ground that the controlling statute in this appeal is 38 U.S.C. § 5904, and that is where we will begin. Section 5904 concerns "[r]ecognition of agents and attorneys generally." Among other things, section 5904 provides for the possibility of direct "[p]ayment of fees out of past-due benefits": "When a claimant and an . . . attorney have entered into a [qualifying] fee agreement . . . , the total fee payable to the . . . attorney may not exceed 20 percent of the total amount of any past-due benefits awarded on the basis of the claim."[69] A qualifying fee agreement must provide that the attorney's fee "(i) is to be paid to the . . . attorney by the Secretary directly from any past-due benefits awarded on the basis of the claim; and (ii) is contingent on whether or not the matter is resolved in a manner favorable to the claimant."[70]

Section 5904 never uses the words "validity," "eligibility," or "entitlement," or any variations of these words. Section 5904 does, however, use the word "reasonable" and variations of it.

In terms of reasonableness, section 5904 provides some helpful initial guidance. Congress expressly delegated responsibility to the Secretary to regulate how much an attorney can charge

---

[66] *See Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018) (statutory interpretation); *Langdon v. Wilkie*, 32 Vet.App. 291, 296 (2020) (regulatory interpretation).

[67] *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012) (statutes); *Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006) (quoting *Brown v. Gardner*, 513 U.S. 115, 120 (1994)) (regulations); *see also Kisor v. Wilkie*, __ U.S. ___, ___, 139 S. Ct. 2400, 2415 (2019); *Artis v. District of Columbia*, __ U.S. __, __, 138 S. Ct. 594, 603 (2018) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

[68] *Hornick v. Shinseki*, 24 Vet.App. 50, 52 (2010) (statutes); *King v. Shinseki*, 26 Vet.App. 484, 488 (2014) (regulations); *see King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (articulating same general principles); *Imazio Nursing, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1564 (Fed. Cir. 1995) (same).

[69] 38 U.S.C. § 5904(d), (d)(1).

[70] § 5904(d)(2)(A).

for representation in particular cases: "The Secretary may prescribe in regulations reasonable restrictions on the amount of fees that an . . . attorney may charge a claimant for services rendered in the preparation, presentation, and prosecution of a claim before the Department."[71] Congress also specified that "[a] fee that does not exceed 20 percent of the past due amount of benefits awarded on a claim shall be presumed to be reasonable,"[72] (i.e., what appellant calls the "mandatory" presumption of reasonableness[73]). Finally, "[t]he Secretary may, upon the Secretary's own motion or at the request of the claimant, review a fee agreement . . . and may order a reduction in the fee called for in the agreement if the Secretary finds that the fee is excessive or unreasonable."[74]

The statute leaves us wanting for a comprehensive understanding of the relationships among validity, eligibility, entitlement, and reasonableness. But the Agency shed more light on the nature of the relationships through the regulations that Congress directed the Agency to adopt, 38 C.F.R. § 20.609 (2007) and § 14.636 (2008-present).

But before explaining how the regulations provide guidance about the question we face, we must confront a preliminary question. Namely, which of the two potentially applicable regulations applies to appellant's appeal: § 20.609 or § 14.636. Otherwise, our analysis could get confusing. The Board concluded that § 20.609 controls, because all three fee agreements in this case were executed before § 14.636's effective date, June 23, 2008.[75] Yet appellant says § 14.636 governs, although he doesn't explain in any depth why that might be so.[76] The Board was correct. Section 20.609 clearly controls based on the effective date of that regulation. Appellant does not contest that all three fee agreements were executed before the regulation's effective date. And he doesn't mount any developed argument about why VA's specification of that effective date is unlawful.[77] So, § 20.609, together with § 5904, provides the analytical framework that applies

---

[71] § 5904(a)(5).

[72] *Id.*

[73] Appellant's Br. at 16.

[74] § 5904(c)(3)(A).

[75] R. at 16; Accreditation of Agents and Attorneys; Agent and Attorney Fees, 73 Fed. Reg. 29,852-01, 29,866 (May 22, 2008) (explaining the changes to the prior regulation, § 20.609, and providing the effective date for the changes).

[76] *See* Appellant's Br. at 14-16.

[77] *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (declining to evaluate an underdeveloped claim for service connection (citing U.S. VET. APP. R. 28(a)(5) (providing that an appellant's brief must contain "an argument… and the reasons for [it], with citations to the authorities … relied on"))).

here. But that is not to say that § 14.636 has no use, though it does not control. As we explain, § 14.636 provides context to and aids our understanding of § 20.609.

Alone, § 20.609 may still have left us with questions about the relationships among validity, eligibility, entitlement, and reasonableness. But reading § 20.609 along with § 14.636 for context, we better understand the analytical framework. Like section 5904, § 20.609 uses only the word "reasonable" and no other labels to demarcate the rest of the framework. But § 20.609 does flesh out the framework, creating substantive requirements that the Secretary later carried over to § 14.636 and labeled "valid," "eligible," and "reasonable."[78] So, with the benefit of § 14.636's clarifications, we understand § 20.609 to provide for a potentially three-pronged fee inquiry: validity, eligibility, and reasonableness. Now we examine each prong in more detail.

So first, validity of the fee agreement.[79] Section 20.609 requires (among other things) that, to be valid, a fee agreement must include "[t]he specific terms under which the amount to be paid for the services of the attorney-at-law or agent will be determined."[80]

Next is eligibility.[81] The text provides that eligibility, like validity, comprises a finite, enumerated list of requirements. Indeed, VA clarified, in § 14.636, that an eligibility analysis is restricted to the requirements of paragraph (c).[82]

Only one textually provided requirement remains: reasonableness of the fee.[83] Reasonableness concerns the relationship between the amount of the fee and the attorney's representation under the facts and circumstances of a case. Section 20.609(i) provides that the Board has the authority to consider reasonableness in the first instance in this case, and may do so

---

[78] *Compare* § 20.609(b)-(d), (e), (g), *with* § 14.636(b)-(d), (e), (g) (2008).

[79] § 20.609(g); *see also* § 14.636(g)(1) (2019).

[80] § 20.609(g); *see also* § 14.636(g)(1)(v) (2019).

[81] § 20.609(b)-(d); *see also* § 14.636(b)-(d) (2019).

[82] § 14.636(c)(4), (i) (2019).

[83] § 20.609(e)-(f); *see also* § 14.636(e)-(f) (2019).

sua sponte.[84] And, equally important here, § 20.609(e) sets out a *nonexhaustive* list of factors "considered in determining whether fees are reasonable."[85]

Because § 20.609(e)'s enumerated factor list for reasonableness is nonexhaustive, "the Board may consider not only the statutory and regulatory requirements . . . but . . . also . . . other factors pertinent to the specific circumstances of the case."[86] For example, both the model and state bar rules of professional conduct can inform a reasonableness analysis.[87] Note also that the Secretary has promulgated § 14.632, which "establishes standards of conduct applicable to all persons authorized to represent claimants before VA"[88] and requires consideration of State bar rules of conduct.[89]

Take another example that looms large in this case. Effective February 19, 2019, VA added a ninth factor to § 14.636(e): "if applicable, the reasons why an agent or attorney was discharged or withdrew from representation before the date of the decision awarding benefits."[90] The regulatory history for this factor reveals that this change served "to *clarify* a claimant's continuing obligations with regard to fees"[91] and affirm the reasoning of *Scates*,[92] in which the Federal Circuit

---

[84] Section 20.609(i) states: "The Board of Veterans' Appeals may review a fee agreement between a claimant or appellant and an attorney-at-law . . . *upon its own motion* or upon the motion of any party to the agreement and may order a reduction in the fee called for in the agreement if it finds that the fee is excessive or unreasonable in light of the standards set forth in paragraph (e) of this section." (emphasis added); *see also* § 5904(c)(3)(A). There is no need to overthink the phrase "upon its own motion"; it does not require the Board to file some kind of literal motion separate from its decision. *See* Oral Argument at 11:10-15:45, *Cox v. McDonough*, U.S. Vet. App. No. 19-3317 (oral argument held Mar. 16, 2021), http://www.uscourts.cavc.gov/oral_arguments_audio.php. That is just another way of saying that the Board can consider reasonableness sua sponte. *Sua sponte*, BLACK'S LAW DICTIONARY (11th ed. 2019) (meaning "[w]ithout prompting or suggestion; on its own motion"). A party need not raise the issue.

[85] *See also* § 14.636(e) (2019).

[86] *Cornell v. McDonald*, 28 Vet.App. 297, 304 (2016), *aff'd sub nom. Cornell v. Wilkie*, 718 F. App'x 972 (Fed. Cir. 2018); *see also Bly v. McDonald*, 28 Vet.App. 256, 264 (2016), *vacated on other grounds sub nom. Bly v. Shulkin*, 883 F.3d 1374 (Fed. Cir. 2018); *Lippman v. Nicholson*, 21 Vet.App. 184, 190 (2007) ("limited to a reasonable fee under the circumstances of the case").

[87] *Cornell*, 28 Vet.App. at 304 (citing both the Model Rules of Professional Conduct and Illinois Rules of Professional Conduct because the attorney in that case was an Illinois bar member).

[88] 73 Fed. Reg. 29,866.

[89] 38 C.F.R. § 14.632(d) (2019).

[90] § 14.636(e)(9) (2019).

[91] VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 151 (Jan. 18, 2019) (emphasis added). This choice of wording is important, because it indicates that the intention was not to create a new factor to consider in all cases going forward, but to incorporate certain factors that had developed at common law. *See Bly*, 28 Vet.App. at 264 ("Caselaw is clear that in reviewing fees for reasonableness, the Secretary may consider not only the factors set forth in 38 C.F.R. § 14.636(e) but also other factors pertinent to the specific circumstances of the case.").

[92] 84 Fed. Reg. 151.

determined that the reason for attorney discharge was a proper consideration in a reasonableness analysis.[93] We will discuss *Scates* in more detail shortly.

Note, though, that nowhere does the statute or regulation use "entitlement," or variations of it. As a textual matter, entitlement is not its own freestanding requirement.

And yet caselaw sometimes speaks in terms of and references "entitlement" in fee analyses.[94] However confusing at times, though, our caselaw never suggests a fourth prong to the regulatory framework; indeed, our caselaw supports the three-pronged framework we already covered.[95] As does the Federal Circuit's decision in *Scates*, which also helps us better understand how the concept of "entitlement" fits into the equation.[96]

In *Scates*, an attorney, who had represented a veteran in a benefits claim before VA but whose representation the veteran had terminated during the proceedings, sought direct payment of 20% of past-due benefits that VA had awarded the veteran.[97] The Federal Circuit considered "which component of the Department—the Board . . . or the Regional Office—should decide initially the lawyer's claim."[98] In the decision on appeal to the Federal Circuit, this Court sitting en banc held that the RO must first address "'all issues involving entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of

---

[93] *Scates*, 282 F.3d at 1368.

[94] *See, e.g.*, *Scates v. Gober*, 14 Vet.App. 62, 64 (2000) (en banc) ("Because we read *Cox* as holding that the Board does not have original jurisdiction to consider under section 5904(c)(2) any issues regarding entitlement to attorney fees in direct-payment cases, we hold that all issues involving entitlement or eligibility for attorney fees under direct-payment contingency-fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO [regional office] in accordance with the normal adjudication procedures and cannot be the subject of sua sponte or other original (on motion) BVA [Board of Veterans' Appeals] review.") (mentioning only eligibility, not entitlement, in the actual order), *aff'd as modified sub nom. Scates v. Principi*, 282 F.3d 1362 (Fed. Cir. 2002) (modifying this en banc Court's remand order because of the entitlement-versus-reasonableness distinction but failing to define the relationships clearly).

[95] *Cornell*, 28 Vet.App. 304 ("By February 2013, Ms. Cornell had physical possession of the money and the issue was not only eligibility to receive the fees but also reasonableness in retaining the fees paid to her."); *Lippman*, 21 Vet.App. at 190 ("When an attorney representation contract is terminated but the attorney claims entitlement to a portion of the past-due benefits awarded, the RO should evaluate whether he or she is 'eligible' to collect the fee, and then, upon objection of either party or on the Board's own initiative, the Board may review the fee for reasonableness using the factors set out in *Scates* and § 20.609(e)."); *Stanley v. Principi*, 16 Vet.App. 356, 361 (2002) (per curiam) ("Thus, the Court holds that all issues involving eligibility for attorney fees under non-direct-payment fee agreements, as contrasted with the issues of reasonableness and excessiveness, must first be addressed by the RO in accordance with the normal adjudication procedures and cannot be the subject of original BVA review.").

[96] 282 F.3d 1362 (Fed. Cir. 2002).

[97] *Id.* at 1363.

[98] *Id.*

14

reasonableness and excessiveness,'" which the Board could address in the first instance.[99] Because this Court concluded that the issue was one of eligibility or entitlement, not reasonableness, and that the Board had decided the issue in the first instance, the Court vacated the Board decision and remanded the matter for the RO to adjudicate the claim.[100] The Federal Circuit modified this Court's remand order and affirmed it as modified.[101]

To get there, first the Federal Circuit read the agreement in context and in light of the applicable statutory provisions and their history, and concluded that "an attorney discharged during the case is entitled only to a fee reflecting his contribution to the litigation."[102] Then the Federal Circuit turned to the question of which entity determines the amount of the fee.[103] The Federal Circuit explained that, though the Board is primarily an entity with appellate jurisdiction, it did have original jurisdiction to review direct-payment contingency-fee agreements for reasonableness.[104] And the Federal Circuit reasoned that "[t]he line between (1) entitlement to and (2) reasonableness and excessiveness of attorney fees may not be as clear and bright as the Veterans Court believed," explaining how an issue could be framed as one of entitlement or reasonableness.[105]

Ultimately, though, in *Scates*, the Federal Circuit did not "decide whether the Board would have jurisdiction over the attorney's claim under § 5904(c)(2)."[106] Instead, the Federal Circuit concluded that it could sustain the decision on appeal "on an alternative ground: that on the particular facts of this case, the Regional Office was the appropriate agency initially to decide [the attorney's] attorney fee claim."[107] The Federal Circuit identified "a number of factually-oriented issues" that the RO might need to resolve, as the entity "better qualified" to do so.[108] Finally, the Federal Circuit noted that "[o]rdinarily state law controls the attorney-client relationship" but that

---

[99] *Id.* at 1364.

[100] *Id.* at 1364-65.

[101] *Id.* at 1363.

[102] *Id.* at 1365-66.

[103] *Id.* at 1366.

[104] *Id.* at 1366-67.

[105] *Id.* at 1367.

[106] *Id.* at 1368.

[107] *Id.*

[108] *Id.* at 1368-69.

here, "a federal statute provides for and governs" direct-payment contingent-fee agreements, so "[i]n that situation, should not federal rather than state law govern those aspects of the relationship?"[109]

Having covered the law that guides our analysis, we now turn to its application to this case.

*B. Application*

In the decision on appeal, the Board concluded that appellant was "not entitled to any fees" because it found that the veteran had discharged appellant for "good and adequate cause" under the terms of the fee agreement, and that "[t]herefore, a discussion as to whether the fees awarded were unreasonable, or what amount of fees is reasonable, is unnecessary."[110] The question is whether the Board exceeded its authority, or otherwise erred, when it denied appellant any fee based on the contract term. We conclude that it did not. The Board had authority to consider the contract term, as well as appellant's conduct, and did not err in its analysis. Taken in context, the Board's no-entitlement finding fits within § 20.609's textual framework, here, as a threshold consideration—if not part and parcel[111]—of its reasonableness inquiry.

We stress that we are *not* holding that *anytime* anyone uses the word "entitled" or "entitlement" in a fee analysis, he or she necessarily does so in the context of reasonableness. In fact, we acknowledge that in the very Board decision at issue here, the Board summarized another finding—that appellant was *ineligible* for a fee related to the TDIU award—by saying that appellant was "not entitled to attorneys fees" because there was no final Board decision on that issue.[112] The bottom line is, context is key. These sorts of inartful substitutions of "entitlement" or "entitled" for the regulatory terms of art apparently creates confusion and, here, in part gave rise to this appeal. We hope this opinion clears up any confusion and leads to more precise word choice.

Now back to how the Board's reasoning accords with law. As an initial point, no one disputes the agreement's validity or appellant's eligibility for a fee, and the Board found the agreement valid and the appellant eligible for a fee. Nevertheless, we mention validity and eligibility because they provide important context for our conclusion that the Board neither

---

[109] *Id.* at 1369-70.

[110] R. at 19.

[111] *See Scates*, 282 F.3d at 1367 (suggesting to some extent that entitlement and reasonableness could be one in the same).

[112] R. at 18.

16

exceeded its authority nor erred. Starting with validity, it would be odd for § 20.609 to require inclusion of "[t]he specific terms under which the amount to be paid for the services of the attorney-at-law or agent will be determined"[113] if VA could never consider such terms in its fee analysis as a matter of law. It follows that at least one VA entity could consider them. The questions become which one, under what circumstances, and at what point in the rest of the inquiry.

A look at eligibility narrows down the answers. Basically, an attorney is eligible for direct payment if he checks all the boxes on the statutory and regulatory checklist; eligibility is not subject to some additional, extratextual factor, say, a unique contract term. So, neither VA nor a court can import an extratextual eligibility requirement, or properly conclude, for example, that an attorney is not "eligible" for a fee by virtue of a unique contract term because that consideration is beyond the textual eligibility requirements.

On the other hand, we know that the reasonableness inquiry is based on a *nonexhaustive* factor list and that "the Board may consider not only the statutory and regulatory requirements . . . but . . . also . . . other factors pertinent to the specific circumstances of the case."[114] Imagine the reasonableness inquiry as a dimmer switch. The amount of light is the amount of the fee. The facts and circumstances of the case move the switch, controlling the fee amount. Suppose the facts and circumstances, such as the "good and adequate cause" discharge and contract term in this case, raise the question whether an attorney should receive any fee at all (i.e., whether the attorney is entitled to any fee), for a reason apart from the enumerated validity and eligibility requirements. A denial of any fee, as here, is the equivalent of sliding the dimmer switch fully off.[115] Because reasonableness is such an inclusive, facts-and-circumstances inquiry, we conclude that the Board had authority to consider the "good and adequate cause" term of the parties' agreement and its application to appellant's conduct while he represented the veteran.

What's more, though § 14.636 does not apply here, we underscore that the reason for attorney discharge is now listed as a reasonableness factor in § 14.636(e)(9). This later regulatory

---

[113] § 20.609(g); *see also* § 14.636(g)(1)(v) (2019).

[114] *Cornell*, 28 Vet.App. at 304; *see also Bly*, 28 Vet.App. at 264; *Lippman*, 21 Vet.App. at 190 ("limited to a reasonable fee under the circumstances of the case").

[115] This metaphor is consistent with *Scates*'s holding. Essential to the Federal Circuit's modification of this Court's remand order in *Scates* was the Federal Circuit's criticism of this en banc Court's holding that entitlement was (1) distinct from reasonableness and (2) folded into an eligibility analysis. 282 F.3d at 1367 (explaining how "[t]he line between . . . entitlement to and . . . reasonableness and excessiveness of attorney fees may not be as clear and bright as the Veterans Court believed").

history supports our conclusion about the scope of the Board's authority in § 20.609. If § 14.636 applied, VA could consider the reason for discharge, even if the parties had not contracted to condition fees on discharge circumstances.

But they did. And, given the facts-and-circumstances nature of the reasonableness analysis, we see no principled reason to conclude that the Board could not base denial of any fee, as it did, on the parties' all-or-nothing contract term. After all, that was their choice. Nor does appellant cite any law that provides a principled reason to ignore this choice. Therefore, we hold that the Board acted within its authority when it denied appellant any fee based on the "good and adequate cause" discharge and contract term.[116]

Further, with the law clarified, and with context, we can see that the Board built its reasons for denial on a strong foundation in controlling law. Under the heading "Reasonableness," the Board cited all the controlling law: the presumption of reasonableness, *Scates*'s holding that the presumption does not apply when an attorney is discharged, the *Scates* reasonableness factors, and regulatory reasonableness factors.[117] Again, the Board properly considered the all-or-nothing contract term as a unique fact or circumstance of the case at hand.[118] The Board properly consulted VA regulations and appellant's State bar rules to describe the standard of conduct that applied to that contract term.[119] After thoroughly discussing how appellant's conduct failed to meet the standard, the Board concluded that appellant was discharged for "good and adequate cause," meaning he was not entitled to any fee under the contract. In other words, the Board merely enforced the parties' agreement, and slid the dimmer switch completely off (i.e., finding no entitlement to any fee).

What, then, to do with the Board's statement that "a discussion as to whether the fees awarded were reasonable, or what amount of fees is reasonable, is unnecessary"?[120] We understand the Board's statement to mean simply that there was no need to conduct a cookie-cutter

---

[116] This case is also distinguishable from *Scates* in that, here, the entitlement/reasonableness issue does not involve thorny factual disputes perhaps more properly resolved by an agency of original jurisdiction. *Scates*, 282 F.3d at 1368-69. Appellant raises no arguments about the facts underlying the Board's "good and adequate cause" determination. Therefore, as a matter of law, the Board was fully empowered to decide the issue.

[117] R. at 18-19.

[118] *Cornell*, 28 Vet.App. at 304; *see* § 20.609(e) (2007) (listing nonexhaustive factors).

[119] R. at 19-23; 38 C.F.R. § 14.632(d) (2019); *Cornell*, 28 Vet.App. at 304.

[120] R. at 19.

reasonableness inquiry because, in this unique case, the "good and adequate cause" discharge and contract term ended the inquiry. In other words, appellant's choices led to the result that no fee was reasonable, a finding that can equally be stated in terms that appellant was not entitled to a fee.

Again, it's worth noting that appellant makes no argument about the substance of the Board's finding that the veteran had "good and adequate cause" to discharge appellant under his and appellant's agreement. Therefore, appellant has forfeited any such argument.[121] But we note that even were we to review the Board's determination on this matter, it is not clearly wrong. Indeed, it's demonstrably correct. Appellant certainly did not provide the kind of representation and client communication one would expect of a prudent lawyer.

Our foregoing analysis lets us make quick work of appellant's reasonableness arguments. First is the argument that the Board lacked subject matter jurisdiction over the issue of reasonableness of appellant's fee because neither the veteran nor OGC sought review of that issue under 38 C.F.R. § 14.636, and thus OGC made no reasonableness determination in the first instance for the Board to review.[122] This argument wrongly assumes that § 14.636 controls—when it does not. As we previously discussed,[123] § 20.609 controls and clearly provides that the Board has original jurisdiction over the reasonableness issue.

Next, the argument that the Board erred as a matter of law when it failed to apply the mandatory presumption of reasonableness for a 20% fee.[124] Any failure by the Board to apply the "mandatory" presumption of reasonableness for a 20% fee was not error because, at most, a presumption is just that—a presumption.[125] And the Board clearly, if implicitly, decided that the facts and circumstances of this case rebutted any presumption. What's more, in practice the presumption seems to have less bite than appellant suggests.[126]

---

[121] *See DeLisio v. Shinseki,* 25 Vet.App. 45, 47 (2011) (Court's disposition of case addressed only those portions of the Board decision argued on appeal).

[122] Appellant's Br. at 14-16.

[123] *Supra* discussion p. 11.

[124] Appellant's Br. at 16-17; *see* §§ 14.636(f), 20.609(f).

[125] *Bly*, 28 Vet.App. at 264 (noting "the Court has noted that many veterans could be deprived of rightful benefits if the Court allowed all attorneys, without regard to individual circumstance, to collect a full 20% of past-due benefits." (citing *Lippman v. Shinseki*, 23 Vet.App. 243, 253-54 (2009))); *see also Scates*, 282 F.3d at 1366 ("[A]n attorney with a contingent fee contract for payment of twenty percent of accrued veterans benefits awarded, discharged by the client before the case is completed, is not automatically entitled to the full twenty percent fee.").

[126] § 20.609(f); *see also* § 14.636(f) (2019); 73 Fed. Reg. 29,869. This provision of the Federal Register provides:

Section 14.636(f) implements the statutory presumption that fees that do not exceed 20 percent of

Next is appellant's argument that the Board erred in relying on dicta in *Scates*.[127] Any reliance by the Board on dicta did not constitute error, much less reversible error, because the Board's reasonableness analysis was otherwise proper and is supported by other sources.[128] In short, appellant has not demonstrated that any error (and we don't think there is any error) prejudiced him. That is fatal to his argument.[129]

Turning to appellant's next argument, the Board did not exceed its authority, or err as a matter of law, when it denied, rather than reduced, the unreasonable fee.[130] Nothing in statute, regulation, or caselaw precludes the Board from awarding no fee. Section 5904 imposes no floor on "a reduction in the fee called for in the agreement if the Secretary finds that the fee is excessive or unreasonable."[131] Stated differently, there are times—and this is one of them—where the only "reasonable" fee is $0.

Last is appellant's argument that the Board erred by failing to discuss reasonableness.[132] As we have already discussed, one could in fact fairly call what the Board did here a reasonableness analysis. And we see no law that requires more discussion than what the Board provided. Having said that, in the future there may well be a case where an attorney is discharged for cause, yet the parties did not agree to a "good and adequate cause" term like the one in this case. Such a case may call for further discussion of additional reasonableness factors. But that is not the case before us because appellant's contractual choice negated the need for any further discussion.

---

> past-due benefits awarded are reasonable. We interpret these [presumption] provisions to mean that VA is not *required* to initiate the review of a fee that is less than or equal to 20 percent of past-due benefits awarded, and that any fee in excess of 20 percent does not benefit from the presumption and is subject to review by OGC on its own motion.

(emphasis added). *Scates* also seems to suggest, if implicitly, that the presumption does not weigh heavily if something has raised a question about reasonableness. *See* 282 F.3d at 1365-69.

[127] Appellant's Br. at 17-23.

[128] *See Butts v. McDonald*, 28 Vet.App. 74, 80 (2016) (citing *DaimlerChrysler Corp. v. United States*, 361 F.3d 1378, 1385 n.3 (Fed.Cir. 2004) ("Dicta or not, the Federal Circuit's considered view on a matter is entitled to deference.")).

[129] *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error).

[130] Appellant's Br. at 23.

[131] § 5904(c)(3)(A).

[132] Appellant's Br. at 25-26.

As much as we have covered so far, we still have two more arguments to address. Appellant made a complicated argument (which we described earlier[133]), conflating validity, eligibility, entitlement, and reasonableness,[134] and involving three legal principles: res judicata, the law of the case doctrine, and the prohibition on reversing favorable findings.[135] But none of those principles carries the day for appellant. Neither res judicata nor the law of the case doctrine barred the Board decision on appeal, and neither the Court nor the Board unlawfully disturbed a favorable finding.

Res judicata, or claim preclusion, "ensures that a litigant may have his or her day in [c]ourt, but not two or three."[136] "Principles of finality and *res judicata* apply to agency decisions that have not been appealed and have become final."[137] Claims become final when a veteran fails to appeal an RO decision within the relevant period.[138] The 2015 Board decision was not final, because the veteran filed a timely appeal to this Court. Therefore, res judicata barred nothing here.

The law of the case doctrine "operates to preclude reconsideration of identical issues" when an appellate court makes a determination, the court remands the case, and then the case returns to the appellate court.[139] "The purpose of the doctrine is to foreclose relitigation of a question once considered and decided by an appellate court where the same case is once again before it upon a subsequent appeal."[140] That doctrine does not apply to the Board's legal conclusions, at least not when, as here, the veteran previously appealed those conclusions and this Court vacated them and remanded the matter.[141]

And, in *Medrano v. Nicholson*,[142] this Court held that it is "not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."[143] But it

---

[133] *Supra* discussion p. 7.

[134] *See* Appellant's Br. at 9-13 (referring to validity, eligibility, entitlement, and reasonableness interchangeably).

[135] *Id.*

[136] *Bissonnette v. Principi*, 18 Vet.App. 105, 112 (2004).

[137] *Id.*

[138] *Cook v. Principi*, 318 F.3d 1334, 1336 (Fed. Cir. 2002) (en banc).

[139] *Johnson v. Brown*, 7 Vet.App. 25, 26-27 (1994).

[140] *Id.*

[141] *See Means v. Brown*, 9 Vet.App. 482, 483 (1996) (explaining the law of the case doctrine); *Johnson*, 7 Vet.App. at 26-27 (same).

[142] 21 Vet.App. 165, 170 (2007), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

[143] *Id.*

makes no sense to apply that rule here, where the Court did not reverse anything in the December 2016 memorandum decision; the Court vacated the 2015 Board decision and remanded the matter based on inadequate reasons or bases.[144] So appellant's *Medrano* argument fails. What's more, direct-fee requests, such as the one at issue here, are simultaneously contested claims.[145] And "[t]he very nature of a simultaneously contested claim means that a material factual determination will be favorable to one claimant while at the same time being adverse to another."[146] So, to the extent the Court did reverse something, the Court was entitled to disturb factual findings favorable to appellant here because "[h]olding otherwise would deprive the adversely affected [veteran] of [his] right to meaningful judicial review."[147] So that argument fails no matter which way we look at it.

Second and lastly, we address appellant's argument that the Board misapplied 30 U.S.C. § 5904(d) when it concluded that appellant was not eligible for a fee based on the TDIU award and grant of service connection of depressive disorder, NOS, because TDIU is not a stand-alone claim.[148] We see no error, but even if one occurred, it was harmless.

It could well be that no error whatsoever occurred regarding the Board's no-eligibility finding for a fee based on the award of TDIU. Section 20.609(c)(1)(i) conditions a fee on the existence of "[a] final decision . . . promulgated by the Board of Veterans' Appeals with respect to the issue, or issues, involved." And the Board denied eligibility for a fee related to the award of TDIU because there was no final Board decision on that issue.[149] Seemingly contrary to appellant's argument regarding the TDIU no-eligibility finding, the Federal Circuit has considered eligibility for a fee related to a TDIU claim separate from eligibility for a fee related to other issues, and has looked for a final Board decision regarding the TDIU claim specifically.[150] The Federal Circuit noted that "[b]oth the statute and the regulations are explicit about [the final Board decision]

---

[144] R. at 163-64.

[145] *Mason v. Shinseki*, 743 F.3d 1370, 1376 (Fed. Cir. 2014).

[146] *Sapp v. Wilkie*, 32 Vet.App. 125, 151 (2019) (citing *Mason*, 743 F.3d at 1374).

[147] *Id.*

[148] Appellant's Br. at 13-14.

[149] R. at 18; § 20.609(c)(1)(i); *see* § 14.636(c)(3)(i) (2019), (c)(2)(i) (2017).

[150] *Stanley v. Principi*, 283 F.3d 1350, 1359 (Fed. Cir. 2002).

requirement."[151] So the Board's decision in this case seems to accord with Federal Circuit precedent.

But even if the Court were to assume error, that error was harmless. After all, as we already discussed, the Board properly found that appellant was discharged for "good and adequate cause" and should not be awarded a fee.

At the end of the day, the Board's decision is fully consistent with the governing law and is supported by an adequate statement of reasons or bases. As we noted at the beginning of this opinion, choices have consequences. The Board's determination—to enforce the choices appellant made when he entered into his fee agreements with the veteran and then performed his services inadequately leading to a discharge—was within the Board's authority. And, as we have explained, the Board's determination was correct.

## IV. CONCLUSION

After considering the parties' briefs, oral argument, the governing law, and the record, the Court AFFIRMS the May 7, 2019, Board decision.

TOTH, *Judge*, concurring, I join the opinion in full and write separately only to acknowledge the Board's authority under the public rights doctrine to examine contractual provisions under 38 U.S.C. § 5904.

Contract disputes involving monetary damages are private actions governed by state law and carry the right to a jury trial under the Seventh Amendment of the U.S. Constitution.[152] *See Int'l Fin. Servs. Corp. v. Chromas Techs. Can. Inc.*, 356 F.3d 731, 735 (7th Cir. 2004). For this reason, administrative tribunals such as the Board—or Article I courts such as ours—generally lack authority to adjudicate private disputes such as whether a party was justified under contract in terminating an attorney for good and adequate cause. *See Stern v. Marshall*, 564 U.S. 462, 482-86 (2011).

---

[151] *Id.*

[152] The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

> U.S. CONST. amend. VII.

But under the public rights doctrine, Congress may assign the adjudication of a legal claim to non-jury tribunals where the case concerns a public right. *N. Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 67-68 (1982). Public rights cases can arise when a case "involves a seemingly private right" that is created by statute and is "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Granfinanciara S.A. v. Nordberg*, 492 U.S. 33, 54 (internal quotation marks omitted).

Here, section 5904 creates a public right in the form of the direct payment of attorney's fees and spells out various conditions required to qualify for such entitlement. Subsection (c)(3)(A) of 5904 gives the Secretary the authority to review agreements filed with VA and to reduce the fee if it is either unreasonable or excessive. This forms the textual foothold that provides the Board the authority to review the terms of the contract between attorney and client and to determine whether the fees were reasonable in light of the work performed.

So, the Board has the authority to examine an agreement for the limited purpose of determining entitlement under section 5904—specifically, whether the fees were reasonable. The public right at issue here is the *direct* payment of such fees, and the Board's findings related to section 5904 do not amount to an ultimate adjudication of a contract dispute such as whether any termination was, in fact, for good cause.